**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

GERARDO ORTIZ-MAGANA,

*Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney General,

*Respondent.*

No. 06-72797

Agency No.
A75-184-118

ORDER
AMENDING
OPINION AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 15, 2008*
San Francisco, California

Filed April 28, 2008
Amended September 9, 2008

Before: Barry G. Silverman, M. Margaret McKeown, and
Richard C. Tallman, Circuit Judges.

Opinion by Judge Tallman

---

*The panel unanimously finds this case suitable for decision without oral argument. See Fed. R. App. P. 34(a)(2).

12405

## COUNSEL

Kari E. Hong, Esq., Law Offices of Kari E. Hong, Portland, Oregon, for the petitioner.

Dalin R. Holyoak, Esq., Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for the respondent.

## ORDER

The opinion filed on April 28, 2008, and published at 523 F.3d 1042 (9th Cir. 2008), is AMENDED as follows:

Page 1050: The second full paragraph (under subsection 3) reads:

> "Finally, we must afford at least some deference to the BIA's legal determination that aiding and abetting falls within the definition of a violent crime. *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1113 (9th Cir. 2007) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)) (reasoning that "because the BIA's decision was an unpublished disposition, issued by a single member of the BIA, which does not bind third parties, we employ the less deferential *Skidmore* standard" (quotation omitted)). *Skidmore* instructs that the deference we afford to an agency's judgment "will depend upon the thoroughness evi-

dent in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." 323 U.S. at 140."

Replace with the following language:

"Finally, we are persuaded by the BIA's determination that aiding and abetting falls within the definition of a violent crime. Although concise, the BIA's interpretation is well-taken. The BIA reasoned:"

Page 1050: Delete the third full paragraph, which states:

"The BIA's interpretation here, although concise, is well-taken. The BIA reasoned:"

No petitions for rehearing or rehearing en banc will be accepted.

The mandate shall issue forthwith.

IT IS SO ORDERED.

---

**OPINION**

TALLMAN, Circuit Judge:

Assault with a deadly weapon under California Penal Code § 245(a)(1) is a crime of violence as defined by 18 U.S.C. § 16; therefore, an alien convicted of that offense generally is an "aggravated felon" for immigration purposes. We must decide as a matter of first impression whether an alien is also an "aggravated felon" when he is convicted under section 245(a)(1) as an aider and abettor instead of as a principal. The

Board of Immigration Appeals (BIA) ruled that no principled distinction can be drawn for immigration purposes between an alien's status as an accessory and his role as a principal in the commission of a section 245(a)(1) aggravated felony. We agree, and deny the petition for review.

**I**

In 1991, Gerardo Ortiz-Magana (Ortiz-Magana), an eight-year-old native and citizen of Mexico, entered the United States without inspection or admission. On November 27, 1998, at the age of fifteen, he adjusted his status to become a lawful permanent resident.

On December 29, 2003, Ortiz-Magana was charged, in a criminal information by the State of California, with assaulting Robert Mora with a knife, employing force likely to produce great bodily injury. The information further alleged that Ortiz-Magana committed the offense for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, and assist in criminal conduct by gang members. Finally, the information charged that for purposes of limiting the availability of probation as a sentence, Cal. Penal Code § 1203(e)(3), and as a sentencing enhancement under Cal. Penal Code § 12022.7, Ortiz-Magana "personally inflicted great bodily injury upon Robert Mora, a person not an accomplice to the offense." On July 1, 2004, Ortiz-Magana pleaded guilty to, and was convicted of, "[a]ssault with a deadly weapon by force" likely to produce great bodily injury contrary to California Penal Code section 245(a)(1). He received a sentencing enhancement for participation in a criminal street gang, *see* Cal. Penal Code § 186.22(b)(1), which the abstract of judgment indicates was stayed.

On November 11, 2005, the Department of Homeland Security (DHS) served Ortiz-Magana with a notice to appear for removal proceedings alleging that he had been convicted

of an aggravated felony. After several attempts to obtain counsel and receiving continuances to get a lawyer, Ortiz-Magana eventually appeared *pro se* before an Immigration Judge (IJ), waived his privilege of representation by counsel, and asked to proceed with his case. During proceedings, Ortiz-Magana conceded all allegations in the notice to appear, save for one. He contended that he was convicted of section 245(a)(1) not as a principal, but as an aider or abettor under section 245(a)(5). He urges us to conclude that this characterization matters in deciding whether he was convicted of an aggravated felony when he says he did not personally wield the knife.

Confusingly, the documents submitted as part of the record contain handwriting by an unknown party appearing to strike out the section 12022.7 sentencing enhancement and designating such enhancement as "stricken." This designation is problematic. An enhancement under California Penal Code section 12022.7 applies to those "who personally inflict great bodily injury on any person other than an accomplice in the commission of a felony or attempted felony." Thus, facially, it is unclear whether Ortiz-Magana personally committed the offense.

The plea transcript lends further support to Ortiz-Magana's theory that he was not convicted as a principal. At the plea hearing, the following exchange occurred between the judge and the prosecutor:

| Judge: | For clarification on the record, there is charged in the Information a [count for violating Penal Code] 12022.7(a). It is my understanding that may have been an error. In any event that is going to be stricken. |
| | Is that correct? |

| District Attorney: | That's correct. That's always been an aiding and abetting on the 245(a)(5) and [Ortiz-Magana] did not personally inflict great bodily injury. |
|---|---|
| Judge: | Therefore, Mr. Magana, it appears you will be eligible for half time credits[.] |

During the immigration proceedings, the attorney for the government examined the relevant penal code sections and confirmed that "I don't see that there's an (a)(5) . . . . They may have referred to the (a)(1), showing that there's an aiding and abetting within the (a)(1)." The IJ agreed: "There's no (a)(5) that I can see directly under the California Penal Code. The transcript may have an error on it." As a result, the IJ continued the hearing for fifteen days so that the parties could clarify Ortiz-Magana's role in the offense.

On January 18, 2006, the parties again appeared, and Ortiz-Magana submitted an affidavit from his former defense attorney, which provides in relevant part:

    2.   Mr. Magana pled guilty to aiding and abetting an assault with a deadly weapon with a gang enhancement in this matter.

    3.   I am informed and believe that Mr. Magana did not plead guilty to any personal use allegations, including use of the knife or causing great bodily injury.

For its part, DHS submitted an affidavit from the state's prosecuting attorney in the matter. The assistant district attorney averred that "Section 245(a)(5) does not and has never existed . . . . Any plea transcript in the above entitle[d] case reflecting the defendant pleading guilty to any code section

other than Penal Code Section 245(a)(1) is errant." The district attorney also insisted that Ortiz-Magana "ple[ ]d guilty to a violation of California Penal Code Section 245(a)(1) (assault with a deadly or dangerous weapon with force likely to commit great bodily injury) and admitted the special allegation under Penal Code Section 186.22(b)(1) that he committed the assault with the deadly weapon to benefit a criminal street gang."

After considering the affidavits, the fact that no section 245(a)(5) exists under California law, and the information and abstract of judgment, the IJ concluded that Ortiz-Magana personally committed the assault, and the crime was one of violence and an aggravated felony rendering him ineligible for discretionary cancellation of removal. The IJ explained:

> The Court also finds that in this specific case there is no accessory issue and or aiding and abetting issue. There is no princip[a]l issue as listed by the various Ninth Circuit case decisions. [Ortiz-Magana] was convicted of a substantive aggravated felony, crime of violence, sentenced to one year or more.

Ortiz-Magana timely appealed to the BIA. Represented by counsel, he argued that (1) aiding and abetting is included under California Penal Code section 245(a)(1); (2) under our decision in *Penuliar v. Ashcroft*, 435 F.3d 961 (9th Cir. 2006), *vacated*, *Gonzales v. Duenas-Alvarez*, 127 S.Ct. 815 (2007), his conviction for aiding and abetting an assault with a deadly weapon was not an aggravated felony; and (3) because a crime of violence as contemplated by 18 U.S.C. § 16 excludes aiding and abetting, he was not convicted of an aggravated felony. Thereafter, DHS moved for summary affirmance.

On May 23, 2006, the BIA issued a written decision affirming the IJ's determination. The BIA concluded:

> [Ortiz-Magana] does not dispute that section 245(a)(1) of the California Penal Code qualifies as a

crime of violence. [Ortiz-Magana] was convicted of that offense. He thus meets the requirement for removability under the literal language of the statute. It does not matter how [he] committed the crime or whether he was convicted as a principal or for aiding and abetting the crime. In either case he was still convicted of a crime that is "a crime of violence."

With respect to Ortiz-Magana's contention that *Penuliar*, in which we were unwilling to extend accessorial liability to the aggravated felony of theft as theft had been defined under California law, was dispositive of his case, the BIA concluded that "[f]or us to extend the 'aiding and abetting' theory of *Penuliar* to cases other than theft offenses would appear to warp the Act so that any alien convicted in California could immediately claim to have been an accomplice instead of a principal, and avoid the consequences of criminal acts." Finally, the BIA agreed that the charging document and abstract of judgment were sufficient to sustain Ortiz-Magana's removal. This timely petition for review followed.

## II

We lack jurisdiction to review final orders of removal unless they raise constitutional questions or questions of law. *See* 8 U.S.C. § 1252(a)(2)(C) & (a)(2)(D). Whether a crime constitutes an aggravated felony is a question of law, which we review *de novo*. *Morales-Alegria v. Gonzales*, 449 F.3d 1051, 1053 (9th Cir. 2006). Although we review such questions *de novo*, we give appropriate deference to the BIA's legal determinations. *Gonzales-Gonzales v. Ashcroft*, 390 F.3d 649, 651 (9th Cir. 2004). Because the BIA issued a written decision, we review the BIA's determination in combination with the IJ's decision as a guide to the BIA's reasoning. *Gu v. Gonzales*, 454 F.3d 1014, 1019 (9th Cir. 2000).

## III

## A

As an initial matter, the government urges us to ignore the principal-accessory issue in this case because, in its view, the charging and conviction documents are sufficiently clear that he personally committed the offense. We disagree.

**[1]** Ortiz-Magana asserts that his conviction cannot qualify as an aggravated felony because it falls outside the generic definition of a crime of violence. His argument therefore is premised on the notion that the government cannot sustain its burden under the modified categorical approach set forth in *Taylor v. United States*, 495 U.S. 575, 599-602 (1990). It is well established that under that approach, we "consider whether documentation or other judicially noticeable facts in the record indicate that [the petitioner] was convicted of the elements of the generically defined crime." *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 887 (9th Cir. 2003).

**[2]** The modified categorical approach offers no assistance here. The judicially noticeable facts, here the abstract of judgment, the information, and the plea colloquy, are contradictory. As noted, the information alleged that Ortiz-Magana personally committed the offense and added sentencing enhancements for his personal role as well as for participating in a criminal gang. On the other hand, the abstract of judgment contains handwriting purporting to strike the sentencing enhancement for personally committing the offense, creating an ambiguity as to Ortiz-Magana's exact role. Lending further support to his argument, the plea colloquy contains an admission by the prosecuting attorney that Ortiz-Magana's charge had "always been an aiding and abetting on the 245(a)(5) and [Ortiz-Magana] did not personally inflict great bodily injury." Although the parties agree that the California Penal Code does not include a subsection (a)(5), that fact alone is of no moment. The citation to the non-existent criminal provision

most likely was human error, either the product of inadvertence on the prosecutor's behalf or stenographic mistake. We therefore cannot say on this record that Ortiz-Magana's conviction unequivocally was based on his role as a principal.[1]

**B**

Resort to the modified categorical approach is not dispositive to support the conclusion that Ortiz-Magana personally committed the offense. Nevertheless, the record *does* support, and the parties do not dispute, that he pleaded guilty to, and was convicted of, violating section 245(a)(1) of the California Penal Code. As a result, we proceed to consider whether Oritiz-Magana's conviction as an aider and abettor makes any difference. Three factors persuade us that Ortiz-Magana's status as an accessory does not.

**1**

In *Gonzales v. Duenas-Alvarez*, 127 S.Ct. 815 (2007), the Supreme Court undertook an exhaustive analysis examining the common law evolution of accomplice liability in jurisdictions of the United States, including the federal courts. Initially, the Court explained, "[t]he common law divided participants in a felony into four basic categories: (1) first-degree principals, those who actually committed the crime in question; (2) second-degree principals, aiders and abettors present at the scene of the crime; (3) accessories before the

---

[1]We have considered whether we should remand to the BIA because the record is unclear as to Ortiz-Magana's precise role in the offense of conviction. Two factors militate against remand. First, the IJ presented the parties with ample opportunity to present additional evidence. Both submitted affidavits, which were of little help. No additional record from the state court was discovered that would conclusively resolve the question. We believe that no additional information would be available that previously was not, and a remand therefore would be futile. Second, as discussed below, we can resolve the legal question on the basis of the available evidence.

fact, aiders and abettors who helped the principal before the basic criminal event took place; and (4) accessories after the fact, persons who helped the principal after the basic criminal event took place." *Id.* at 820.

In recent times, however, the lines between these historical categories have blurred. In fact, "[i]n the course of the 20th century, . . . American jurisdictions eliminated the distinction among the first three categories." *Id.* Presently, "every jurisdiction—all States and the Federal Government—has expressly abrogated the distinction among principals and aiders and abettors who fall into the second and third categories." *Id.* (internal quotation marks omitted).

**[3]** These observations led the Court to conclude that "[s]ince criminal law now uniformly treats those who fall into the first three categories alike, the generic sense in which the term theft is now used in the criminal codes of most States covers such aiders and abettors as well as principals." *Id.* (internal quotation marks and citation omitted). For immigration purposes, the Court reasoned, "the criminal activities of these aiders and abettors of a generic theft must themselves fall within the scope of the term 'theft' " as it appears in the federal statute defining aggravated felonies. *Id.*

**[4]** As a general matter, then, those who aid and abet a felony are treated the same as if they had *personally* committed the offense. Ortiz-Magana's reliance on *Penuliar*, which the Supreme Court vacated in *Alvarez*, for the opposite proposition is thus foreclosed.

**a**

Ortiz-Magana nonetheless maintains that despite *Alvarez*'s reasoning, his case presents a critical distinction: theft is an aggravated felony and traces its roots to the common law. On the other hand, a crime of violence is a legislative construction, not a crime recognized at common law. Therefore, he

asserts that simply because the Supreme Court has found that aiding and abetting a vehicle theft may constitute an aggravated felony, it does not mean that aiding and abetting falls within the scope of a crime of violence under 18 U.S.C. § 16. We remain unpersuaded.

First, Ortiz-Magana does not dispute that a conviction as a principal under section 245(a)(1) is a crime of violence. Indeed, we have repeatedly held that "it is undisputed that assault with a deadly weapon is included in . . . the amended definition of 'aggravated felony.' " *Aragon-Ayon v. INS*, 206 F.3d 847, 851 (9th Cir. 2000). Second, the California courts have included aiding and abetting within the definition of assault with a deadly weapon under section 245(a)(1). *Gill v. Ayers*, 342 F.3d 911, 915 (9th Cir. 2003) (citing *People v. Rodriguez*, 17 Cal. 4th 253, 261 (1998)). Third, there is little support for any distinction under the common law between aiding and abetting assault with a deadly weapon and personally accomplishing the offense. *Alvarez*, 127 S.Ct. at 820. The same specific intent is required for each as is the resulting harm.

**[5]** As a result, because it is conceded that a conviction under section 245(a)(1) is a crime of violence, California convicts aiders and abettors under the same statute, and there is no material distinction between an aider and abettor and principals in any jurisdiction of the United States including California and federal courts: aiding and abetting an assault with a deadly weapon is the functional equivalent of personally committing that offense. Since that offense is a crime of violence, it constitutes an aggravated felony.

**b**

Ortiz-Magana also urges us to analogize crimes of violence under federal immigration law to "serious felonies" as defined by California law. We find such an analogy unhelpful.

To qualify under California's three-strikes provision, convictions must be for "serious felonies." *See People v. Rodriguez*, 17 Cal. 4th 253, 261 (Cal. 1998). Consequently, in three-strike cases, the California courts have drawn a distinction between aiding and abetting and personally committing an offense charged under California Penal Code section 245(a)(1): the former may not be used as a "strike," but the latter may. *See id.* Indeed, statutorily, "only those crimes are 'serious' felonies in which the defendant '*personally* inflict-[ed] great bodily injury on any person, other than an accomplice, or . . . *personally* use[d] a firearm' or *personally* use[d] a dangerous or deadly weapon.' " *People v. Watts*, 131 Cal. App. 4th 589, 595 (Cal. 2005) (citing Cal. Penal Code § 1192.7(c)(8); (c)(23)) (emphasis added).

Thus, California's legislative scheme requires, as an element, the *personal* commission of a serious felony. The statutory language of 18 U.S.C. § 16 contains no such analogue, and, in our view, comparison to California law is unavailing.

**c**

**[6]** Ortiz-Magana correctly notes that *Alvarez* did not foreclose all possibility that an offense committed by an aider and abettor potentially would fall outside the generic definition of an aggravated felony. However, the Supreme Court squarely placed the burden on the alien to demonstrate a realistic probability that the state would apply the offense in a way that falls outside the generic definition of the crime. *Alvarez*, 127 S.Ct. at 822 (reasoning that "Duenas-Alvarez must show something special about California's version of the doctrine-for example, that California in applying it criminalizes conduct that most other States would not consider 'theft.' "). The Court further instructed:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal

imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Id.*

**[7]** Ortiz-Magana has not met this burden. Although he points to his own case, he presents no evidence that California has applied aiding and abetting assault outside the generic definition of a crime of violence. It is undisputed that a criminal may be punished for violating section 245(a)(1) by aiding and abetting that offense. Ortiz-Magana's status as an accessory did not change the *mens rea* required to prove the crime. In other words, he pleaded guilty to intending that an assault with a deadly weapon take place and that harm occur as a result. Because, as discussed above, an alien's status as an aider or abettor makes no practical difference in whether his crime is one of violence, he cannot demonstrate that his conviction was not for an aggravated felony. Nor does he attempt to point to other cases in which the California courts have applied section 245(a)(1) in a "special (non-generic) manner." *Alvarez*, 117 S.Ct. at 822. We are therefore persuaded that Ortiz-Magana cannot show "something special about California's version of the doctrine," *id.*, that would alter the outcome in this case.

**2**

The plain language of the statute does not compel the opposite result. A crime of violence under 18 U.S.C. § 16 is defined as:

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Facially, nothing in the statutory definition requires the offense to be personally committed by the individual. Indeed, the terms "attempted use" and "threatened use" appear to lend support that inchoate crimes, ones that need not be completed, are encompassed in the definition. Theoretically, Ortiz-Magana could have aided and abetted the charged offense by threatening the use of force.

Ortiz-Magana insists, however, that had Congress intended 18 U.S.C. § 16 to include aiding and abetting, accessorial language would plainly appear in the text. For example, Congress could have amended 8 U.S.C. § 1101(a)(43)(U) to include aiding and abetting along with the designation that "conspiracy" and "attempt" offenses constitute aggravated felonies. In essence, Ortiz-Magana attempts to draw on the well-established principle that when "Congress includes particular language in one section of a statute but omits it in another[,] . . . it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987) (quotation omitted). His reasoning is misplaced.

Ortiz-Magana has not cited any examples of the inclusion of "aiding and abetting" in one section and its exclusion in another. He simply believes Congress should have included that term in two distinct provisions. Even if this rule of construction had force under these circumstances, it did not prevent the Supreme Court from interpreting aiding and abetting vehicle theft to fall within the enumerated aggravated felony

of theft. *See Alvarez*, 127 S.Ct. at 820. The concerns Ortiz-Magana cites were equally present in *Alvarez.* We therefore conclude that the statutory language encompasses crimes of violence that an alien aids and abets.

**3**

**[8]** Finally, we are persuaded by the BIA's determination that aiding and abetting falls within the definition of a violent crime. Although concise, the BIA's interpretation is well-taken. The BIA reasoned:

> [Ortiz-Magana] does not dispute that section 245(a)(1) of the California Penal Code qualifies as a crime of violence. [Ortiz-Magana] was convicted of that offense. He thus meets the requirement for removability under the literal language of the statute. It does not matter how [he] committed the crime or whether he was convicted as a principal or for aiding and abetting the crime. In either case he was still convicted of a crime that is "a crime of violence."

With respect to Ortiz-Magana's contention that *Penuliar,* in which we were unwilling to extend accessorial liability to the aggravated felony of theft as theft had been defined under California law, was dispositive of his case, the BIA concluded that "[f]or us to extend the 'aiding and abetting' theory of *Penuliar* to cases other than theft offenses would appear to warp the Act so that any alien convicted in California could immediately claim to have been an accomplice instead of a principal, and avoid the consequences of criminal acts." We agree.

**[9]** It is unlikely that Congress intended for aliens, who otherwise committed crimes of violence, to be able to escape the attendant immigration consequences simply because of their status in the commission of the offense as an accessory. The BIA's reasoning is especially persuasive in light of the fact

that no jurisdiction of the United States makes a distinction between the conduct of an aider and abettor and a principal, *Alvarez*, 127 S.Ct. at 820, and the statutory definition does not preclude classification based on an alien's accessorial role in the offense of conviction. Like the BIA, we conclude that Ortiz-Magana was convicted of a crime of violence and is removable as an aggravated felon.

## IV

An alien, like Ortiz-Magana, who is convicted of aiding and abetting an assault with a deadly weapon under California Penal Code § 245(a)(1) has committed a crime of violence as if he had personally committed the offense. The BIA correctly reached this result in finding that Ortiz-Magana was removable as a matter of law regardless of whether he was a principal or an accessory.

**PETITION DENIED**.