**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

GERARDO GRAJEDA,
            *Defendant-Appellant.*

No. 07-50387

D.C. No.
CR-07-00214-H-01

OPINION

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted
May 7, 2008—Pasadena, California

Filed September 21, 2009

Before: Raymond C. Fisher and Richard A. Paez,
Circuit Judges, and James L. Robart, District Judge.*

Opinion by Judge Paez

*The Honorable James L. Robart, United States District Judge for the Western District of Washington, sitting by designation.

**COUNSEL**

Vincent J. Brunkow, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Karen P. Hewitt, United States Attorney, Bruce R. Castetter, Assistant U.S. Attorney, and Eugene S. Litvinoff, Assistant U.S. Attorney, San Diego, California, for the plaintiff-appellee.

---

**OPINION**

PAEZ, Circuit Judge:

Gerardo Grajeda appeals from the 78-month sentence imposed following his plea of guilty to illegal reentry in violation of 8 U.S.C. § 1326. In arriving at this sentence, the district court applied a sixteen-level enhancement to Grajeda's offense level based on a determination that Grajeda had been previously convicted of assault with a deadly weapon or by means likely to produce great bodily injury under California Penal Code section 245(a)(1), and that such conviction was a "crime of violence" under United States Sentencing Guidelines ("U.S.S.G.") § 2L1.2(b)(1)(A)(ii).

In this appeal, we consider whether a prior conviction for a violation of California Penal Code section 245(a)(1) qualifies as a "crime of violence" within the meaning of U.S.S.G. § 2L1.2(b)(1)(A)(ii). We conclude that it does. We also consider and reject Grajeda's claims that the district court failed to resolve disputed factual issues concerning his prior convictions, as required by Rule 32(i) of the Federal Rules of Criminal Procedure, and that the district court erred by enhancing his sentence on the basis of prior convictions that were neither alleged in the indictment nor proven beyond a reasonable doubt. We therefore affirm the sentence, but remand for the

district court to delete the reference in the judgment to 8 U.S.C. § 1326(b) as a crime of conviction.

## I.   Factual Background

Grajeda, a Mexican citizen, was indicted on January 31, 2007, on one count of illegal reentry in violation of 8 U.S.C. § 1326. Grajeda pled guilty before a magistrate judge, and, on August 20, 2007, the district court accepted his plea.

A probation officer prepared and submitted a Presentence Report ("PSR") for the court's consideration. The PSR outlined a lengthy criminal record, including a 1996 conviction for assault with a deadly weapon or by means likely to produce great bodily injury, in violation of California Penal Code section 245(a)(1). The report calculated an advisory guidelines range of seventy to eighty-seven months, and recommended a sentence of seventy-eight months. The guidelines calculation relied upon application of a sixteen-level enhancement to Grajeda's offense level based on a determination that Grajeda's prior conviction under California Penal Code section 245(a)(1) was a crime of violence. Grajeda objected to the PSR on the ground that the statutory maximum for illegal reentry was two years, and argued that his prior convictions could not be used to sentence him beyond that maximum because they were not alleged in the indictment and proven beyond a reasonable doubt to a jury, and, alternatively, because they were not proven by clear and convincing evidence.

The district court conducted a combined plea and sentencing hearing on August 20, 2007. The court overruled Grajeda's objections to the PSR, adopted the PSR's recommendations, and sentenced Grajeda to seventy-eight months in prison. The judgment listed the "Title and Section" of the offense as "8 USC 1326(a) and (b)." Grajeda timely appealed.

## II.   Standard of Review

We review de novo the district court's compliance with Rule 32 of the Federal Rules of Criminal Procedure. *See United States v. Thomas*, 355 F.3d 1191, 1194 (9th Cir. 2004). Whether a conviction under California Penal Code section 245(a)(1) constitutes a "crime of violence" under U.S.S.G. § 2L1.2(b)(1)(A)(ii) is a question of law that we review de novo. *United States v. Esparza-Herrera*, 557 F.3d 1019, 1021-22 (9th Cir. 2009) (per curiam).

## III.   Rule 32

Grajeda first objects to his sentence on the ground that the district court failed to resolve factual disputes regarding the prior convictions alleged in the PSR; he argues that in failing to do so, the court violated Rule 32 of the Federal Rules of Criminal Procedure. We disagree with Grajeda's characterization of the dispute presented to the district court. Because Grajeda's objections to the PSR were legal, not factual, the district court was not required to make any factual determinations, and so committed no error.

**[1]** Rule 32 provides that a sentencing court "may accept any undisputed portion of the presentence report as a finding of fact," but that the court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(A)-(B). On appeal, Grajeda argues that he "controverted" the fact of his prior convictions in his objections to the PSR, and that the district court improperly relied on the 1996 section 245(a)(1) conviction listed in the PSR to enhance his sentence without ruling on the factual dispute.

**[2]** A review of Grajeda's objections, however, as laid out in his sentencing memorandum, leaves no doubt that his

objections raised only *legal* arguments, not factual ones. Grajeda did not controvert the accuracy of the PSR or argue that he had not been convicted of the listed crimes. Rather, he argued that under *United States v. Booker*, 543 U.S. 220 (2005), the government was required to prove the prior convictions beyond a reasonable doubt, or, alternatively, by clear and convincing evidence, before the court could rely on the convictions to enhance his sentence, and that the government had failed to do so. The transcript from the sentencing hearing also reflects that Grajeda's objections to use of the prior convictions in sentencing were purely legal, as Grajeda's counsel acknowledged the prior felony conviction under section 245(a)(1) and noted only that he had "submitted some legal objections" to the proposed sentencing enhancement.

**[3]** Finally, the district court did rule on Grajeda's objections, expressly overruling them during the sentencing hearing. The court's ruling was proper under *United States v. Romero-Rendon*, 220 F.3d 1159 (9th Cir. 2000), which held that an "uncontroverted PSR" is "clear and convincing evidence" of a prior conviction, and supports the application of a sentencing enhancement based on such conviction. *Id.* at 1165. The district court thus complied with Rule 32 and did not err by relying on the prior convictions listed in the PSR.

## IV. Crime of Violence Enhancement

To determine whether the district court properly applied the sixteen-level "crime of violence" sentencing enhancement in U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2006)[1] based on Grajeda's con-

---

[1]The district court applied the 2006 edition of the United States Sentencing Guidelines Manual in calculating Grajeda's sentencing guideline range, and all references are to that edition. The 2006 and 2008 versions of § 2L1.2(b)(1)(A)(ii) are identical, and instruct the court to increase a defendant's base offense level by sixteen levels "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii).

viction under California Penal Code section 245(a)(1), we apply the approach set forth in *Taylor v. United States*, 495 U.S. 575, 602 (1990). *Esparza-Herrera*, 557 F.3d at 1022. We first consider whether the offense defined by section 245(a)(1) is categorically a crime of violence by assessing whether the "full range of conduct covered by [the statute] falls within the meaning of that term." *United States v. Juvenile Female*, 566 F.3d 943, 946 (9th Cir. 2009) (quoting *Valencia v. Gonzales*, 439 F.3d 1046, 1049 (9th Cir. 2006)). If so, our inquiry is complete. If not, we turn to the modified categorical approach "to determine if there is sufficient evidence [in the record] to conclude that [Grajeda] was convicted of the elements of the generically defined crime." *United States v. Vidal*, 504 F.3d 1072, 1077 (9th Cir. 2007) (en banc) (quoting *Chang v. INS*, 307 F.3d 1185, 1189 (9th Cir. 2002)) (first alteration in original). Here, because we conclude that section 245(a)(1) is categorically a crime of violence, we do not apply the modified categorical approach.

## A.

**[4]** An offense is a "crime of violence" for purposes of § 2L1.2(b)(1)(A)(ii) if it either (1) constitutes one of the crimes listed in the "enumerated offense" prong of the definition, or (2) "has as an element the use, attempted use, or threatened use of physical force against the person of another" under the definition's second clause, referred to as the "element" prong or test. U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2006);[2]

---

[2]The definition provides in full:

"Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2006). The 2008 definition differs slightly in its description of the enumerated offenses; the only difference in the "element" prong is the insertion of the word "other" between "any" and "offense." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2008).

*see also United States v. Gomez-Leon*, 545 F.3d 777, 787-88 (9th Cir. 2008) (detailing and labeling the approaches).

On appeal, the government argues that assault with a deadly weapon or force likely to cause great bodily injury under section 245(a)(1) requires proof of the use, attempted use, or threatened use of physical force against another person, and that the offense is therefore a crime of violence under the element prong of the § 2L1.2 definition. We agree, and therefore need not address whether section 245(a)(1) also qualifies as an "aggravated assault" under the enumerated offense prong of § 2L1.2.

Over the past several years, courts have endeavored to delineate the contours of the various "crime of violence" definitions. *See Gomez-Leon*, 545 F.3d at 786-88 (providing overview). The most significant advances have concerned the *mens rea* required to prove "use of physical force." In *Leocal v. Ashcroft*, the Supreme Court held that the phrase "use . . . of physical force against the person or property of another," contained in the crime of violence definition provided in 18 U.S.C. § 16(a),[3] required proof of active employment of force, and could not be satisfied by negligent or accidental conduct. 543 U.S. 1, 9-11 (2004). In *Fernandez-Ruiz v. Gonzales*, this court, sitting en banc, followed several other circuits in extending *Leocal*, holding that "neither recklessness nor gross negligence is a sufficient mens rea to establish that a conviction is for a crime of violence." 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc).

**[5]** Although both *Leocal* and *Fernandez-Ruiz* dealt with the "crime of violence" definition provided in 18 U.S.C.

---

[3]The Comprehensive Crime Control Act of 1984 includes a statutory definition for "crime of violence," codified at 18 U.S.C. § 16, which is applicable to statutes using the phrase. *See Gomez-Leon*, 545 F.3d at 787. This statutory definition partially overlaps with the Sentencing Guidelines definition provided in U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). *See id.* at 787-88.

§ 16(a), we subsequently applied their reasoning to the element prong of § 2L1.2, noting that "the relevant definitions under § 16(a) and U.S.S.G. § 2L1.2 are identical."[4] *United States v. Narvaez-Gomez*, 489 F.3d 970, 976 (9th Cir. 2007). Therefore, a predicate offense must require intentional use, attempted use, or threatened use of force to constitute a crime of violence under § 2L1.2; neither recklessness nor negligence is enough. *See id.*; *see also Gomez-Leon*, 545 F.3d at 787-88.

[6] We have also addressed the *nature* of the force required under the § 2L1.2 crime of violence definition, holding that such force "must actually be violent in nature." *United States v. Lopez-Montanez*, 421 F.3d 926, 929 (9th Cir. 2005) (internal quotation marks and alterations omitted); *see also Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016-17 (9th Cir. 2006) (holding that simple battery under California Penal Code section 242 is not a crime of violence under 18 U.S.C. § 16(a) because it can be based on "the least touching"). With this understanding of the § 2L1.2 crime of violence enhancement, we examine section 245(a)(1) to determine whether it fits within the enhancement's element prong.

## B.

[7] California Penal Code section 245(a)(1) imposes crimi-

---

[4]Like the element prong in § 2L1.2, the crime of violence definition in § 16(a) includes any "offense that has as an element the use, attempted use, or threatened use of physical force." 18 U.S.C. § 16(a); U.S.S.G. § 2L1.2, cmt. n.1(b)(iii) (same). The sole difference is that the § 16(a) definition is inclusive of force "against the person *or property* of another," whereas the Guidelines definition covers only force "against the person of another." *Id.* (emphasis added). Section 16(b) offers an additional definition, based on the "risk that physical force . . . may be used" that is *not* included in the § 2L1.2 definition. 18 U.S.C. § 16(b) (defining as a crime of violence "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense").

nal liability on "[a]ny person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury."[5] The statute thus requires two basic elements, the second defined in the disjunctive: the defendant must have (1) committed an assault (2) using a deadly weapon or instrument or any other "means of force likely to produce great bodily injury." *See People v. Russell*, 28 Cal. Rptr. 3d 862, 865-66 (Ct. App. 2005). The element of "assault" is defined in California Penal Code section 240 as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Penal Code § 240 (West 1995); *see also People v. Colantuono*, 865 P.2d 704, 708 (Cal. 1994).

[8] By criminalizing "unlawful attempt[s] . . . to commit a violent injury on the person of another" with a deadly weapon or force likely to produce serious injury, the statutory language requires at least "attempted use . . . of physical force against the person of another." U.S.S.G. § 2L1.2, cmt. n.1(B)(iii). On its face, section 245(a)(1) would thus qualify as a crime of violence under the element prong of § 2L1.2. However, "in determining the categorical reach of a state crime, we consider not only the language of the state statute, but also the interpretation of that language in judicial opinions." *Ortega-Mendez*, 450 F.3d at 1016. We therefore pro-

---

[5]California Penal Code section 245(a)(1) provides in full:

> Any person who commits an assault upon the person of another with a deadly weapon or instrument other than a firearm or by any means of force likely to produce great bodily injury shall be punished by imprisonment in the state prison for two, three, or four years, or in a county jail for not exceeding one year, or by a fine not exceeding ten thousand dollars ($10,000), or by both the fine and imprisonment.

Cal. Penal Code § 245(a)(1) (West 1995). Neither section 245(a)(1) nor section 240, which defines the term "assault," has changed since Grajeda's conviction in 1995.

ceed to consider Grajeda's arguments that section 245(a)(1), as construed by the California courts, is categorically overbroad.

**1.**

Grajeda first argues that California Penal Code section 245(a)(1) does not require force that is "violent in nature," and therefore does not constitute a crime of violence. We disagree. Although Grajeda is correct that under California law, assault can be accomplished through "the least touching," *People v. Rocha*, 479 P.2d 372, 377 n.12 (Cal. 1971), even the least touching with a deadly weapon or instrument is violent in nature.

[9] California courts have long interpreted the "violent injury" element in criminal assault to require only "the least touching" that is unconsented or otherwise wrongful; such touching "need not be violent or severe." *Colantuono*, 865 P.2d at 709 n.4 (quoting *Rocha*, 479 P.2d at 377 n.12). This would seem to put section 245 beyond the reach of the § 2L1.2 crime of violence definition, which requires that the force used be "violent in nature." *Lopez-Montanez*, 421 F.3d at 929. Indeed, in *Ortega-Mendez*, we held that simple battery in California is not categorically a crime of violence under the element test in 18 U.S.C. § 16(a) because it can be based on "the least touching." 450 F.3d at 1016.

[10] Unlike simple assault, however, section 245(a)(1) requires that the assault be committed either (1) "with a deadly weapon or instrument" or (2) "by any means of force likely to produce great bodily injury." If the conviction is based on "force likely to produce great bodily injury," such force must necessarily go beyond the "least touching," and represents "actual force" that is violent in nature.

[11] Similarly, we conclude that even the "least touching" with a deadly weapon or instrument, which California defines

as any object "used in such a manner as to be capable of pro-
ducing and likely to produce, death or great bodily injury,"
*People v. Aguilar*, 945 P.2d 1204, 1207 (Cal. 1997), is violent
in nature and demonstrates at a minimum the threatened use
of actual force. In so holding, we follow this court's similar
conclusion that assault *with a firearm* under California Penal
Code section 245(a)(2) has as an element the use or threat-
ened use of "actual force," as required under § 16(a), even
though assault in California can generally be committed
through only "unconsented touching." *United States v. Heron-
Salinas*, 566 F.3d 898, 899 (9th Cir. 2009) (per curiam); *cf.
Juvenile Female*, 566 F.3d at 947-48 (holding that "assault
involving a deadly or dangerous weapon or resulting in bodily
injury" under 18 U.S.C. § 111 requires at least the threatened
use of physical force and is a crime of violence under 18
U.S.C. § 16(a)).

Our holding also puts us in accord with the Fifth and Tenth
Circuits. In *United States v. Treto-Martinez*, the Tenth Circuit
considered whether a Kansas aggravated battery offense con-
stituted a crime of violence under the element test, and con-
cluded that a person who touches another "with a deadly
weapon in 'a rude, insulting or angry manner,' has at the very
least 'threatened use of physical force' for purposes of
§ 2L1.2(b)(1)(A)." 421 F.3d 1156, 1160 (10th Cir. 2005),
*cert. denied*, 546 U.S. 1118 (2006). The Fifth Circuit adopted
the Tenth Circuit's reasoning in holding that "the touching of
an individual with a deadly weapon creates a sufficient threat
of force to qualify as a crime of violence" under the element
test in § 2L1.2. *United States v. Dominguez*, 479 F.3d 345,
348-49 (5th Cir. 2007).

**[12]** We therefore hold that the force required by section
245(a)(1) is sufficiently "violent in nature" to satisfy the
§ 2L1.2 crime of violence definition.

**2.**

Grajeda next argues that section 245(a)(1), as construed by
the California courts, does not require proof of sufficiently

intentional conduct to qualify as a crime of violence. Although some language from state court opinions supports this assertion, the case law is decidedly mixed, and we are regardless bound by this court's previous conclusions to the contrary.

**[13]** The *mens rea* required for assault under California law has been the subject of a long, tortured, and ongoing set of explanations in the California courts. *See People v. Williams*, 29 P.3d 197, 200 (Cal. 2001) ("Over the decades, we have struggled to fit th[e statutory] definition of assault into our constantly evolving framework of criminal mental states."); *People v. Colantuono*, 865 P.2d at 708 ("Deciphering the requisite intent for assault and assault with a deadly weapon has been a recurring task for this court."). The definition of assault as "an unlawful *attempt* . . . to commit a violent injury" would seem to suggest that assault is a specific intent crime in California. Cal. Penal Code § 240; *see also Colantuono*, 865 P.2d at 708 (stating that assault "is an attempt to commit a battery" (citation omitted)); *see generally* Joshua Dressler, *Understanding Criminal Law* § 27.05[A] (3d ed. 2001) [*hereinafter* Dressler] ("[A]n attempt is a specific intent offense . . . ."). The California courts, however, have steadfastly held that "assault with a deadly weapon is a *general intent* crime."**[6]** *Rocha*, 479 P.2d at 376 (emphasis added);

---

**[6]**The two most recent California Supreme Court cases holding that assault is not a specific intent crime prompted strong minority opinions arguing the contrary. *See Williams*, 29 P.3d 197, 205-09 (Kennard, J., dissenting); *Colantuono*, 865 P.2d 704, 715-18 (Kennard, J., concurring in part and dissenting in part); *see also People v. Wright*, 123 Cal. Rptr. 2d 494 (Ct. App. 2002) (following *Williams* but arguing at length that it is wrongly decided).

There is general agreement that the original impetus for treating assault as a general, rather than specific, intent crime was to rule out the defense of "voluntary intoxication." *See Colantuono*, 865 P.2d at 708 (explaining that the decision was based, at least in part, on "policy considerations" in order to avoid "the anomalous result of [allowing evidence of voluntary intoxication] . . . to relieve a man of responsibility for the crimes of assault with a deadly weapon or simple assault, which are so frequently committed in just such a manner" (internal quotation marks omitted)).

*accord Williams*, 29 P.3d at 203; *Colantuono*, 865 P.2d at 709.

**[14]** The "general intent" designation, however, does not define a particular *mens rea*; it merely clarifies that the crime does not require "specific intent."[7] *See Rocha*, 479 P.2d at 376 ("[A]ssault with a deadly weapon is a general intent crime. It remains to define what that intent is."); *Williams*, 29 P.3d at 201 (same). The California Supreme Court's two most recent attempts to define the mental state required under state assault statutes are *Colantuono* and *Williams*.

In *Colantuono*, the court attempted to explain the *mens rea* for assault as follows:

> The intent to cause any particular injury, to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary. The pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific harm. Because the nature of the assaultive conduct itself contemplates physical force or "injury," a general intent to attempt to commit the violence is sufficient to establish the crime.

865 P.2d at 712 (internal citations omitted). Emphasizing that the unlawful consequences of an assault need not be specifically intended, the *Colantuono* court concluded that "the necessary mental state is 'an intent merely to do a violent act.' " *Id.* (quoting *People v. Hood*, 462 P.2d 370, 378 (Cal. 1969)).

In 2001, the California Supreme Court revisited the mental

---

[7]*See generally* 1 W.R. LaFave & A. Scott, *Substantive Criminal Law* § 5.2(e) (2d ed. 2003); Dressler § 10.06 ("The terms 'specific intent' and 'general intent' are the bane of criminal law students and lawyers . . . . [Many] text writers recommend that they be abandoned altogether." (internal quotation marks omitted)).

state required for assault. *See Williams*, 29 P.3d at 201 (recognizing "apparent confusion engendered by *Colantuono*"). In doing so, the court "reaffirmed" that assault is not a "specific intent" crime, *id.* at 201, and that "mere recklessness or criminal negligence is still not enough," *id.* at 203. The court also offered the following explanation:

> We may attribute much of th[e] confusion to the fact that the gravamen of assault is the *likelihood* that the force applied or attempted to be applied will result in great bodily injury. Because assault criminalizes conduct based on what *might* have happened—and not what *actually* happened—the mental state for assault incorporates the language of probability, i.e., direct, natural and probable consequences. This language, however, arguably implies an objective mental state consistent with a negligence standard.

*Williams*, 29 P.3d at 202 (citations and internal quotation marks omitted). The court, however, emphasized that it was *not* adopting a "negligence standard," continuing:

> [A] defendant is only guilty of assault if he *intends* to commit an act which would be indictable as a battery, if done, either from its own character or that of its natural and probable consequences. Logically, a defendant cannot have such an intent unless he actually knows those facts sufficient to establish that his act by its nature will probably and directly result in physical force being applied to another, i.e., a battery. In other words, a defendant guilty of assault *must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct*. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur.

*Id.* at 202-03 (emphasis added) (citations and internal quotation marks omitted).

Although the *Williams* court insisted that the above language did not define the *mens rea* of assault in negligence terms, the dissent disagreed. *See id.* at 207 (Kennard, J., dissenting) (noting that "[c]riminal negligence is determined by an objective standard based on whether a reasonable person *in the defendant's position* would have been aware of the risk of harm to another"); *see also People v. Wright*, 123 Cal. Rptr. 2d at 496 (following *Williams* with reservations and treating it as having defined "negligent assault").

Grajeda, echoing the *Williams* dissent, argues that despite the majority's protestations, California's definition of assault requires merely criminally negligent conduct, and thus does not have as an element the intentional use of force, as mandated by the crime of violence definition in § 2L1.2. Certainly some of the *Williams* language supports this position, particularly in focusing on whether the defendant knows facts which would lead a "reasonable person to realize" that his conduct would "probably" cause an injury and disclaiming a standard that would require proof that the defendant intended such injury. *See Williams*, 29 P.3d at 202-03; *id.* at 203 n.3 ("For example, a defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery.").

At the same time, *Williams* and *Colantuono* elsewhere suggest that the use of force must be intentional, and only the specific injury need not be intended. *See Colantuono*, 865 P.2d at 712 ("[U]pon proof of a willful act that by its nature will directly and immediately cause 'the least touching' it is immaterial whether or not the defendant intended to violate the law or knew that his conduct was unlawful. The intent to cause any particular injury, to severely injure another, or to

injure in the sense of inflicting bodily harm is not necessary." (internal citations omitted)); *Williams*, 29 P.3d at 202 ("An assault occurs whenever the next movement would . . . complete the battery . . . . As a result, a specific intent to injure is not an element of assault because the assaultive act, by its nature, subsumes such an intent." (internal citations omitted)); *see also People v. Chance*, 189 P.3d 971, 973 n.2 (Cal. 2008) ("It has long been established that the 'injury' element of the assault statute is satisfied by *any attempt to apply physical force to the victim* . . . . (emphasis added)). Thus the court explained in *Colantuono* that "the necessary mental state" for section 245(a)(1) is "an intent merely to do a violent act," with "the consequences of that act serv[ing] only to inform the inquiry of whether the defendant attempted physical force against the person of another . . . ." 865 P.2d at 712 (internal citation omitted).

We also note that at least one California intermediate court has approved standard jury instructions for section 245 stating that the government need not "prove that the defendant actually intended to use force against someone." *People v. Flores*, 68 Cal. Rptr. 3d 472, 475 (Ct. App. 2007) (quoting California Criminal Jury Instruction ("CALCRIM") 875). While this adds support to Grajeda's argument, we are not convinced that it is dispositive under *Leocal* and *Fernandez-Ruiz* in light of the California Supreme Court's statements that section 245(a)(1) requires proof of an intentional "violent act" with a deadly weapon or instrument or with force likely to cause serious bodily injury that "by its nature will directly and immediately cause" the application of physical force to another. *Colantuono*, 865 P.2d at 712. While this formulation of the necessary *mens rea* does not fit neatly with the standard articulated in *Fernandez-Ruiz*, it satisfies the concerns animating *Leocal* and *Fernandez-Ruiz* that the proscribed conduct be "violent" and "active," and the use of force not merely accidental, as in an automobile accident stemming from drunk or reckless driving. *See Leocal*, 543 U.S. at 9 (noting that while "a person would 'use . . . physical force against' another when

pushing him . . . we would not ordinarily say a person 'use[s] . . . physical force against' another by stumbling and falling into him"); *id.* at 11 (stating that the term crime of violence "suggests a category of violent, active crimes" and thus should not encompass merely accidental conduct such as DUI offenses); *Fernandez-Ruiz*, 466 F.3d at 1130 (explaining that under an Arizona domestic assault statute, "a wife and mother could be convicted . . . by recklessly running a stop sign and causing a traffic accident that injured her passenger-husband and child," and that "[s]uch conduct cannot, in the ordinary sense, be called 'active' or 'violent' " (quoting *Leocal*, 543 U.S. at 11)).

[15] But in parsing the *mens rea* required by section 245(a), we do not write on a blank slate. In *Heron-Salinas*, we recently held that assault with a firearm under California Penal Code section 245(a)(2) is categorically a crime of violence under 18 U.S.C. § 16(a) and 16(b).[8] 566 F.3d at 899. In

---

[8]Additionally, we held that section 245(a)(1) is a crime of violence for the purposes of 18 U.S.C. § 16 in *Ortiz-Magana v. Mukasey*, 542 F.3d 653, 654 (9th Cir. 2008). We are, however, hesitant to rely on *Ortiz-Magana* in considering Grajeda's arguments that section 245(a)(1) is not a crime of violence under § 2L1.2 for several reasons. First, in *Ortiz-Magana* the defendant conceded that section 245(a)(1) was a crime of violence under § 16, and the possibility that the offense might not require the necessary *mens rea* was neither raised nor addressed, as the court focused only on the defendant's argument that a conviction based on aiding or abetting was not a crime of violence. 542 F.3d at 654, 659; *see also Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1082 (9th Cir. 2006) (noting that where a statement is "merely a prelude to another legal issue that commands the panel's full attention, it may be appropriate to revisit the issue in a later case" (citation omitted)). Second, and more importantly, *Ortiz-Magana* does not specify whether the offense qualified as a crime of violence under the element test of § 16(a), which is materially identical to the § 2L1.2 element test, or the "substantial risk test" of § 16(b). The § 16(b) substantial risk test "sweeps more broadly than" the element tests in § 16(a) and § 2L1.2 because the latter tests require proof of the intentional use of force, whereas § 16(b) requires only that the offense involve a substantial risk that force will be intentionally used. *Leo-*

so holding, the *Heron-Salinas* court specifically rejected the argument that California assault does not require the necessary *mens rea* to qualify as a crime of violence. *Id.* Quoting *Williams*, 29 P.3d at 204, for the proposition that assault "requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another," the *Heron-Salinas* court concluded simply that "[t]he *mens rea* requirement is met." 566 F.3d at 899.

**[16]** *Heron-Salinas* forecloses Grajeda's argument that the *mens rea* in section 245(a)(1) is insufficient to meet the requirements of the § 2L1.2 crime of violence definition. The *mens rea* element for assault with a firearm under section 245(a)(2) is the same as that required for assault with a deadly weapon under section 245(a)(1); both offenses rely on the definition of assault in California Penal Code section 240 for their *mens rea* element, and the critical *Williams* and *Colantuono* cases interpreting that element are applicable to both offenses.

**[17]** Further, though this court has evinced some hesitation in applying crime of violence determinations under § 16 to

---

*cal*, 543 U.S. at 9-11; *see also Gomez-Leon*, 545 F.3d at 787. A holding that an offense is a crime of violence under the § 16(b) definition is therefore not determinative of whether the offense is also a crime of violence under § 2L1.2. *Cf. Lopez-Montanez*, 421 F.3d at 930-31 (holding that sexual battery is not a crime of violence under § 2L1.2, and distinguishing a previous holding that sexual battery is a crime of violence under § 16(b) because that definition does not require the use of force).

Similarly, our analysis is not limited by our discussion of a crime of violence sentencing enhancement premised on a section 245(a)(2) conviction in *United States v. Diaz-Argueta*, 564 F.3d 1047, 1050-51 (9th Cir. 2009). In *Diaz-Argueta*, we summarily rejected defendant's argument that his section 245(a)(2) conviction was not a crime of violence under § 2L1.2 because he received a sentence of less than one year; however, we did not address whether the offense is categorically a crime of violence. *See id.*

inquiries conducted under the Guidelines definition, *see, e.g.*, *United States v. Pimentel-Flores*, 339 F.3d 959, 963-64 (9th Cir. 2003) (observing that "the guideline definition [for crime of violence] is different from the statutory definition" and stating that "[e]ach definition works well within its respective regime"), no such hesitation is warranted when considering only the element tests in § 16(a) and § 2L1.2. As we observed in *Gomez-Leon*, "[t]he second phrase of the § 2L1.2(b) definition" and "the element test from 18 U.S.C. § 16(a)," are "materially the same" and "subject to the same construction." 545 F.3d at 788; *see also Narvaez-Gomez*, 489 F.3d at 976 (noting that "the relevant definitions under § 16(a) and U.S.S.G. § 2L1.2 are identical," and concluding that *Fernandez-Ruiz*'s holding that § 16(a) requires intentional force is equally applicable to the element prong in § 2L1.2). The inclusion of offenses involving force "against property" in the § 16(a) definition is the sole difference between the two definitions. *Compare* 18 U.S.C. § 16(a) *with* U.S.S.G. § 2L1.2, cmt. n.1(b)(iii). Therefore, when force against property is not at issue, cases holding that a crime is categorically a crime of violence under the element prongs of the § 2L1.2(b) and § 16(a) definitions are mutually binding. *See, e.g.*, *Gomez-Leon*, 545 F.3d at 790 (treating a case decided under § 16(a) as dispositive of whether the offense at issue was a crime of violence under the element prong of § 2L1.2).

**[18]** We are therefore bound by *Heron-Salinas*' conclusion that assault under California Penal Code section 245(a) requires proof of sufficiently intentional conduct to satisfy the *mens rea* requirement for a crime of violence set forth in *Leocal* and *Fernandez-Ruiz*. Accordingly, we hold that assault with a deadly weapon or by means of force likely to produce great bodily injury under section 245(a)(1) is categorically a crime of violence under the element prong of § 2L1.2. The district court thus committed no error in applying a sixteen-level enhancement to Grajeda's base offense level pursuant to § 2L1.2(b)(1)(A)(ii).

## V. *Apprendi*

Finally, Grajeda argues that the district court erred under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in raising the statutory maximum for a violation of 8 U.S.C. § 1326 on the basis of a prior conviction that was not charged in the indictment, and was neither proven to a jury beyond a reasonable doubt nor admitted. This argument is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), and this court's subsequent cases following *Almendarez-Torres*. *See, e.g.*, *United States v. Almazan-Becerra*, 482 F.3d 1085, 1091 (9th Cir. 2007) (reaffirming that a prior conviction need not be submitted to a jury and proved beyond a reasonable doubt). While Grajeda urges us to read *Apprendi* as overruling *Almendarez-Torres*, we have repeatedly declined to do so, and made clear that although *Apprendi* "has perhaps called into question the continuing viability of *Almendarez-Torres*, we are bound to follow a controlling Supreme Court precedent until it is *explicitly overruled* by that Court." *United States v. Weiland*, 420 F.3d 1062, 1080 n.16 (9th Cir. 2005) (emphasis added) (citation omitted); *see also Almazan-Becerra*, 482 F.3d at 1091. We therefore reject Grajeda's *Apprendi* arguments.

## VI. Conclusion

Because Grajeda raised no factual objections to the PSR, the district court committed no error in relying on the PSR to establish Grajeda's prior conviction under California Penal Code section 245(a)(1). The court also committed no error in applying the sixteen-level enhancement in U.S.S.G. § 2L1.2(b)(1)(A)(ii) on the basis that Grajeda's section 245(a)(1) conviction was for a "crime of violence." We therefore AFFIRM the sentence. We REMAND only for the district court to correct the judgment of conviction by removing the reference to 8 U.S.C. § 1326(b). *See United States v. Herrera-Blanco*, 232 F.3d 715, 719 (9th Cir. 2000); *United*

*States v. Rivera-Sanchez*, 222 F.3d 1057, 1062 (9th Cir. 2000).

**AFFIRMED and REMANDED.**