**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

GARY LAMAR HENRY, AKA
G-Thing, AKA G.,

*Defendant-Appellant*.

No. 19-50080

D.C. No.
2:16-cr-00862-RHW-1

OPINION

Appeal from the United States District Court
for the Central District of California
Robert H. Whaley, District Judge, Presiding

Argued and Submitted November 12, 2020
Pasadena, California

Filed January 6, 2021

Before: Morgan Christen and Paul J. Watford, Circuit
Judges, and Lee H. Rosenthal,\* Chief District Judge.

Opinion by Chief District Judge Rosenthal

---

\* The Honorable Lee H. Rosenthal, Chief United States District
Judge for the Southern District of Texas, sitting by designation.

**SUMMARY**[**]

**Criminal Law**

The panel affirmed convictions for one count of conspiracy to commit bank robbery under 18 U.S.C. § 371; five counts of armed bank robbery under 18 U.S.C. § 2113(a) and (d); two counts of bank robbery under § 2113(a); and three counts of brandishing a firearm during the bank robberies under 18 U.S.C. § 924(c)(1)(A)(ii).

The panel held that the defendant did not waive his Speedy Trial Act claim, that the district court made sufficient findings to support its three ends-of-justice continuances under 18 U.S.C. § 3161(h)(7), and that the delays were not unreasonable.

The panel held that the defendant did not waive his claims under *United States v. Davis*, 139 S. Ct. 2319 (2019), and *Honeycutt v. United States*, 137 S. Ct. 1626 (2017), that the district court misapplied *Pinkerton* liability to the § 924(c) counts, and that *Rosemond v. United States*, 572 U.S. (2014), requires revisiting *Pinkerton* liability.

Because the defendant's convictions are valid under either a *Pinkerton* or aiding-and-abetting theory, the panel did not need to decide which theory the jury used to convict. The panel held that *Honeycutt*, which addressed joint and several liability under 21 U.S.C. § 853, does not apply principles of conspiracy and thus does not require this court

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

to vacate the defendant's § 924(c)'s convictions. The panel also held that *Davis*, under which crimes of violence for § 924(c) are limited to those that have violence as an element under § 924(c)(3)(A), does not conflict with or undermine the cases upholding § 924(c) convictions based on *Pinkerton* liability.

The panel reviewed for plain error the defendant's argument that his § 924(c) convictions should be vacated because the jury instructions and verdict form for the predicate § 2113(d) convictions only required the jury to find a conspiracy to commit generic bank robbery and did not require the jury to find the knowing use of a gun. Noting that *Rosemond* did not alter Ninth Circuit precedents on accomplice liability, the panel declined the defendant's request to revisit the mens rea required for *Pinkerton* liability in light of the Supreme Court's holding in *Rosemond* that "knowledge"—not just reasonable foreseeability—is required for aiding-and-abetting liability for § 924(c) charges. The panel held that the district court's instructions on aiding-and-abetting liability were not plainly erroneous, and that the defendant's conviction on either a *Pinkerton* or an aiding-and-abetting theory was amply supported.

The panel held that the defendant preserved the claim that the indictment failed to allege the necessary elements of armed bank robbery under § 2113(d). Noting that the word "assault" used in the indictment denotes intentionality, the panel wrote that the indictment charged the required mens rea. The panel wrote that the failure to include the "use of a weapon" element in the verdict form for armed robbery was incorrect, but that there is not a basis for reversal, because the district court correctly instructed the jury on the use of a dangerous weapon.

**COUNSEL**

Benjamin L. Coleman (argued), Coleman & Balogh LLP, San Diego, California, for Defendant-Appellant.

David R. Friedman (argued), Assistant United States Attorney, Criminal Appeals Section; Nicole T. Hanna, United States Attorney; L. Ashley Aull, Assistant United States Attorney, Chief, Criminal Appeals Section; Los Angeles, California; for Plaintiff-Appellee.

**OPINION**

ROSENTHAL, Chief District Judge:

This appeal raises three issues: continuances that allegedly violated the Speedy Trial Act; §924(c) convictions after *United States v. Davis*, 139 S. Ct. 2319 (2019); and an allegedly defective indictment and verdict form. Gary Henry appeals his bank robbery, armed bank robbery, and derivative firearms convictions. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and we affirm.

**I.**

In 2017, Gary Henry was indicted with three codefendants for a 2016 series of bank robberies in Los Angeles and Bakersfield, California. Henry was charged with conspiracy under 18 U.S.C. § 371, bank robbery under 18 U.S.C. § 2113(a), armed bank robbery under 18 U.S.C. §§ 2113(a) and (d), and brandishing a firearm during the armed bank robberies under 18 U.S.C. § 924(c)(1)(A)(ii). The indictment alleged that Henry would remain outside the banks while some of his codefendants went inside. The

armed bank robbery counts alleged that "[i]n committing said offense, defendants HENRY and [his codefendants] assaulted and put in jeopardy the life of an employee of [the bank], and others, by using a dangerous weapon and device." Some of the armed bank robbery counts specified that a firearm was used.

Henry was arrested and detained and made his first appearance on May 1, 2017, starting the Speedy Trial Act clock. The district court set a trial date of June 27, 2017. On June 6, 2017, the government and two codefendants, Orlando Soto-Forcey and Edgar Santos, jointly sought a continuance to December 2017, citing the need for more time to prepare and their lawyers' conflicting trial settings through the summer and early fall. Henry opposed the continuance. At a June 12, 2017 status conference, the district court stated that it would grant the continuance over Henry's objection because Santos had just made his first appearance in what was "a complicated conspiracy and bank robbery case." The next day, the district court entered a written order finding that the continuance served the "ends of justice."

In October 2017, the government and all codefendants sought a second continuance, to March 2018. Henry objected but the stipulation provided by the government and Henry's codefendants included Henry's counsel's statement that he too needed the additional time to prepare to defend Henry at trial. The district court issued a written order granting the continuance and finding that: "(i) the ends of justice served by the continuance outweigh the best interest of the public and defendant in a speedy trial; (ii) failure to grant the continuance would be likely to make a continuation of the proceeding impossible, or result in a miscarriage of justice; (iii) failure to grant the continuance would deny

defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

In January 2018, the government and all Henry's codefendants sought a third continuance, to May 2018. Although Henry again objected, the stipulation provided by the government and Henry's codefendants included Henry's counsel's statement that he had trials scheduled for January and March, and that he too needed the additional time "to confer with [Henry], conduct and complete an independent investigation of the case, conduct and complete additional legal research including for potential pre-trial motions, review the discovery and potential evidence in the case, and prepare for trial in the event that a pretrial resolution does not occur." The district court granted the continuance, finding that it served the ends of justice. The district court noted Henry's objection, but also pointed out that Henry's counsel had represented that a "failure to grant the continuance would deny him reasonable time necessary for effective preparation," and that he needed more time because he was "scheduled to begin multiple trials, including a trial set for the same date." (Docket No. 14 at 104–05).

Henry's three codefendants pleaded guilty in February, March, and April 2018. On April 30, 2018, Henry filed a motion to dismiss based on violations of the Speedy Trial Act, 18 U.S.C. § 3161. Henry argued that he had objected to each continuance and that "[t]he Government could have, and should have, brought defendant HENRY to trial within the time period mandated by § 3161(d)(2)." (Docket No. 26 at 319). The district court denied the motion, finding that Henry had not "state[d] or present[ed] any actual issue with the continuances or any contention that the continuances

were invalid [under the Speedy Trial Act]." The district court found the delay excludable under the Speedy Trial Act.

At Henry's six-day trial in May 2018, Santos testified that Henry was the leader of the robbery crew. A jailhouse informant also testified against him and stated that Henry provided guns for robberies.

The parties submitted joint proposed jury instructions and a joint proposed verdict form. The judge read the instructions to the jury before closing arguments. The instruction on armed bank robbery included the requirement that the government prove that "[t]he defendant or a co-conspirator . . . intentionally made a display of force that reasonably caused a victim to fear bodily harm by using a dangerous weapon or device," and that "[a] weapon or device is dangerous if it is something that creates a greater apprehension in the victim and increases the likelihood that police or bystanders would react using deadly force." The instructions explained that "the evidence would not support that the defendant possessed a firearm himself, brandished a firearm, carried it, or used it" during the robberies, but stated that Henry could be convicted under either an aiding-and-abetting or a *Pinkerton* theory of liability, setting out the elements for both.

The verdict form sections on the armed bank robbery counts did not refer to a firearm. The verdict form asked the jury whether it found Henry guilty of armed bank robbery, meaning one including "a display of force that reasonably caused the victim to fear bodily injury." The verdict form sections for the § 924(c) counts did ask the jury whether Henry "or a co-conspirator knowingly possess[ed] a firearm in furtherance of . . . [or] use[d] or carr[ied] a firearm during and in relation to the crime charged," and if the firearm "was brandished."

The jury sent two notes during deliberations. One note asked whether the jury had to find both *Pinkerton* and aiding-and-abetting liability to convict Henry on the substantive counts. The district court responded that the instructions for *Pinkerton* and aiding-and-abetting liability referred to "separate legal principles" and that the jury could base its verdict "on either instruction, alone, or both." The second jury note asked if a finding of guilt on the conspiracy charge would necessarily extend to the armed bank robbery and firearms counts. The court responded that it would not, and while the jury "must decide the other Counts separately," conspiracy was "a means by which [the] defendant may be found guilty of the offenses charged in the other Counts."

Henry was convicted of one count of conspiracy to commit bank robbery under 18 U.S.C. § 371; five counts of armed bank robbery under 18 U.S.C. § 2113(a) and (d); two counts of bank robbery under § 2113(a); and three counts of brandishing a firearm during the bank robberies under 18 U.S.C. § 924(c)(1)(A)(ii). The sentence totaled 387 months: 60 months for conspiracy; concurrent terms of 135 months for each of the bank robbery counts; and a consecutive term of 84 months for each of the three § 924(c) counts.

## II.

On appeal, Henry argues that: (1) the indictment should be dismissed because the district court made inadequate findings and did not dismiss the indictment under the Speedy Trial Act, 18 U.S.C. § 3161(h); (2) the § 924(c) convictions should be vacated because the district court improperly applied *Pinkerton* liability to those counts; and (3) the armed bank robbery counts and the derivative § 924(c) counts should be vacated for structural error because the armed bank robbery counts failed to allege the required mens rea.

The court reviews the denial of the motion to dismiss on Speedy Trial Act grounds *de novo* and reviews findings of fact for clear error. *United States v. King*, 483 F.3d 969, 972 n.3 (9th Cir. 2007) (citations omitted). "A district court's finding of an ends of justice exception will be reversed only if there is clear error." *United States v. Murillo*, 288 F.3d 1126, 1133 (9th Cir. 2002) (quotation omitted). Henry's *Pinkerton* claim based on intervening law is reviewed *de novo* and his forfeited *Pinkerton* claims are reviewed for plain error. *See United States v. McAdory*, 935 F.3d 838, 842 (9th Cir. 2019) (claims based on intervening law); *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (forfeited claims). The sufficiency of the indictment is reviewed *de novo*. *United States v. Omer*, 395 F.3d 1087, 1088 (9th Cir. 2005).

## III.

## A.

The Speedy Trial Act requires a trial within 70 days of the defendant's initial appearance or indictment. *Bloate v. United States*, 559 U.S. 196, 203 (2010). Section 3161(h) sets out delays that are excluded from the 70-day calculation. *Id.* Delays not in one of the enumerated categories may be excluded to serve the "ends of justice." 18 U.S.C. § 3161(h)(7)(A).

The district court must make certain findings to exclude time from the Speedy Trial clock based on the ends of justice:

> No such period of delay . . . shall be excludable under this subsection unless the court sets forth, in the record of the case, either orally or in writing, its reasons for

> finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.

*Id*.

"Excludability under [§ 3161(h)(7)(A)] is not automatic; the period of delay must be 'reasonable.'" *United States v. Hall*, 181 F.3d 1057, 1062 (9th Cir. 1999) (citing *Henderson v. United States*, 476 U.S. 321, 326–27 (1986)). This court "gauge[s] the reasonableness of delay on a case by case basis, given the fact-bound nature of the inquiry.*" United States v. Lewis*, 611 F.3d 1172, 1177 (9th Cir. 2010) (quoting *United States v. Messer*, 197 F.3d 330, 337 (9th Cir. 1999)). "[C]ourts look particularly to whether the delay was necessary to achieve its purpose and to whether there was any actual prejudice suffered by the appellant." *Hall*, 181 F.3d at 1062 (quotation omitted). Other relevant considerations include whether the length of the delay "was so egregious as to call into question its reasonableness" and "whether the defendant was free on bond during the delay." *Messer*, 197 F.3d at 338. Delay is prejudicial when its purpose is to secure the cooperation of codefendants. *Hall*, 181 F.3d at 1063.

"[W]hen a defendant expressly asserts his speedy trial right before the trial court, he preserves that right even if his actions contradict his lawyer's behavior." *United States v. Tanh Huu Lam*, 251 F.3d 852, 858 (9th Cir. 2001) (citing *Hall*, 181 F.3d 1057). The district court must consider a pretrial motion to dismiss under the Speedy Trial Act when it is "not frivolous, defense counsel is proceeding in good faith, and the facts supporting the motions are set forth." *United States v. Alvarez-Perez*, 629 F.3d 1053, 1061 (9th Cir. 2010).

Henry asserts Speedy Trial Act violations because (1) the district court failed to make adequate findings when it granted the continuances under § 3161(h)(7)(A); and (2) the delays were unreasonable.  The government responds that Henry failed to preserve these errors because he did not raise specific violations of the Speedy Trial Act before the district court and because his own counsel twice made the same request for more time as the codefendants.  Henry replies that he properly asserted violations of the Speedy Trial Act before trial, his counsel did not "join" in the continuances, and both Henry and his counsel objected to the first continuance, which alone violated the Speedy Trial Act.  The government argues in the alternative that the district court did not err in granting any or all of the three continuances.

## B.

Henry did not waive his Speedy Trial Act claim.  Both Henry and his counsel objected to the first continuance, which totaled 161 days.  The second and third continuances present a closer question, but Henry also preserved his objection to those continuances, despite his counsel's inconsistent request for more time to prepare.  In *Lam*, the Ninth Circuit found that trial delays were attributable to the defendant when the attorney had "repeatedly stipulated in open court" to the need for more time, and when the defendant did not move to dismiss the indictment prior to trial.  *Lam*, 251 F.3d at 857, 858 n.9.  Although Henry's counsel stated that he needed the additional time provided by the second and third continuances, Henry maintained his objection, and his counsel did not join in the motions for the continuances or the stipulated facts.  Henry moved to dismiss the indictment after the third continuance and before trial.  While Henry's motion did not provide detailed facts, he reiterated his objections and asserted that "[t]he Government

could have, and should have, brought defendant Henry to trial within the time period mandated by § 3161(d)(2)." This court has found that, in keeping with Congress's intent "to place a fair share of responsibility for ensuring that cases are tried in a timely fashion on the district court and government counsel," district courts should consider Speedy Trial Act motions as long as the defendant raises "his belief that the STA ha[s] been violated," even when a motion is made orally or on the eve of trial. *Alvarez-Perez*, 629 F.3d at 1061 (alteration in original) (citation and quotation omitted). Henry's assertion of his rights and pretrial motion to dismiss for Speedy Trial Act violations preserved the issue for appeal.

## C.

"[T]he district court must satisfy two requirements whenever it grants an ends of justice continuance: (1) the continuance must be specifically limited in time; and (2) it must be justified [on the record] with reference to the facts as of the time the delay is ordered." *United States v. Lloyd*, 125 F.3d 1263, 1268 (9th Cir. 1997) (quotation omitted) (alteration in original). Section 3161(h)(7)(B) lists the likelihood of a miscarriage of justice, the complexity of the case, and the lack of opportunity for counsel to complete adequate trial preparations using due diligence as factors a judge must consider in determining whether to grant an ends-of-justice continuance. 18 U.S.C. § 3161(h)(7)(B). Section 3161(h)(7), which provides for ends-of-justice continuances, "demands on-the-record findings and specifies in some detail certain factors that a judge must consider in making those findings." *Zedner v. United States*, 547 U.S. 489, 509 (2006). If the district court does not make the required findings, the delay resulting from the ends-of-

justice continuance is counted against the Speedy Trial clock. *Id.* at 508.

Henry argues that the district court did not make the required findings because it did not hold hearings before granting the second and third continuances and it failed to identify the reasons specifically applicable to Henry to delay the trial. Section 3161(h)(7) requires the district court to provide reasons "either orally or in writing." 18 U.S.C. § 3161(h)(7)A). The statute does not require the court to hold a live hearing on a motion for continuance. The issue is whether the district court made sufficient findings to support each of the three ends-of-justice continuances that it granted.

The district court held a hearing on the first continuance. The court stated, on the record, several reasons for moving the original trial date. It was the first appearance for one of Henry's codefendants, who would not have time to prepare for the trial, then set only a few weeks away. The court asked counsel for the newly appearing codefendant if he could be ready for the trial when set, and he stated that he could not. Henry did not move to sever his trial from that of his codefendants. The court addressed Henry's objection directly, granting the continuance over the objection because the trial was of "a complicated conspiracy and bank robbery case." The district court issued an order incorporating by reference the codefendants' and the government's written stipulation setting out the reasons justifying the continuance, finding that: "(i) the ends of justice served by the continuance outweigh the best interest of the public and defendant in a speedy trial; (ii) failure to grant the continuance would be likely to make a continuation of the proceeding impossible, or result in a miscarriage of justice; and (iii) failure to grant the continuance would deny defense

counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

In October 2017, the government and Henry's codefendants sought a second continuance, to March 2018. Henry objected, but the joint written stipulation provided by the government and Henry's codefendants included Henry's counsel's statement that he needed the additional time to prepare to defend Henry at trial. The district court issued a written order granting the continuance. The order incorporated the joint stipulation by reference and stated that the facts in the stipulation supported a continuance. The court found that "(i) the ends of justice served by the continuance outweigh the best interest of the public and defendant in a speedy trial; (ii) failure to grant the continuance would be likely to make a continuation of the proceeding impossible, or result in a miscarriage of justice; (iii) failure to grant the continuance would deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

On January 19, 2018, the government and Henry's codefendants sought a third continuance, supported by a joint written stipulation, to May 2018. While Henry objected, the joint stipulation included Henry's counsel's statement that he had trials scheduled for January and March, and that he too needed the additional time "to confer with [Henry], conduct and complete an independent investigation of the case, conduct and complete additional legal research including for potential pre-trial motions, review the discovery and potential evidence in the case, and prepare for trial in the event that a pretrial resolution does not occur." The district judge incorporated the stipulation by reference

and granted the continuance, finding that it served the ends of justice.  The court noted Henry's objection, but also noted that Henry's counsel had stated that "failure to grant the continuance would deny him reasonable time necessary for effective preparation," and that Henry's counsel was "scheduled to begin multiple trials, including a trial set for the same date" as Henry's.  (Docket No. 14 at 104–05).

In each instance, the district court made findings on the record based on detailed stipulated facts provided in writing by the government and Henry's codefendants.  Although not joined by Henry, the stipulations included statements by Henry's counsel.  The government and the codefendants stipulated that conflicting trial dates and the need for more time to prepare for trial required the additional delay.  The district court made adequate fact findings to justify each of the three ends-of-justice continuances.  *See United States v. McCarns*, 900 F.3d 1141, 1145 (9th Cir. 2018), *cert. denied*, 139 S. Ct. 926 (2019) ("A district court's discussion of the statutory factors is adequate to support a continuance that serves the ends of justice  when it is clear that the district court considered the factors in § 3161(h)([7])(B) and determined that the continuance was merited based on the applicable factor or factors" (alteration in original) (quotation omitted)); *United States v. Ramirez-Cortez*, 213 F.3d 1149, 1157 n.9 (9th Cir. 2000) ("District courts may fulfill their Speedy Trial Act responsibilities by adopting stipulated factual findings which establish valid bases for Speedy Trial Act continuances.").

## D.

Henry argues that the delays were unreasonable.  "[A]n exclusion from the Speedy Trial clock for one defendant applies to all codefendants. The attribution of delay to a codefendant, however, is limited by a reasonableness

requirement." *Messer*, 197 F.3d at 336 (internal citation omitted). Reasonableness is assessed on a case-by-case basis according to a totality-of-the-circumstances test. *See Messer*, 197 F.3d at 338 (in determining whether a delay was unreasonable, courts consider the length of the delay and whether the defendant was in pretrial detention).

The three continuances totaled 315 days, or approximately ten and a half months. This delay of close to a year is "presumptively prejudicial." *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) ("Depending on the nature of the charges, the lower courts have generally found postaccusation delay presumptively prejudicial at least as it approaches one year." (quotation omitted)). But the Ninth Circuit has upheld similar continuances in complex cases, even when, as here, the defendant is in pretrial detention. *See Lam*, 251 F.3d at 856 (a delay of fourteen and a half months was reasonable in a complex case). In addition to the fact of the detention itself, a jailhouse informant ultimately testified against Henry at trial, and his codefendant Santos pleaded guilty and also testified against him at trial.

In *Hall*, the court found a delay of 293 days between arraignment and trial was unreasonable because, among other issues, "an underlying aim [of the continuances] was to *eliminate* the need for a joint trial by achieving a plea agreement" with the cooperating co-defendant. 181 F.3d at 1063 (emphasis in original). But in *Lewis*, a subsequent case, this court found no error when there was no evidence that the primary purpose of the continuance was to secure the testimony of a codefendant, and when only one of multiple codefendants testified against the objecting defendant. *Lewis*, 611 F.3d at 1178.

This case is closer to *Lewis*. There is no evidence that the primary purpose of the continuances was to secure Santos's testimony or to secure the testimony of a jailhouse informant. Instead, each continuance was supported by detailed information about the complexity of the case and the need for additional time to prepare a defense, particularly because the defense lawyers had a number of conflicting trial commitments. It was reasonable to allow the codefendants and Henry's counsel additional time to adequately prepare to try this complex bank robbery and conspiracy case. Considering all the circumstances, "the addition of [the codefendant's] testimony, although prejudicial, did not make the delay unreasonable." *Id.*

The district court's denial of the motion to dismiss the indictment is affirmed.

## IV.

Henry argues that *United States v. Davis*, 139 S. Ct. 2319 (2019) and *Honeycutt v. United States*, 137 S. Ct. 1626 (2017) prohibit using § 2113(d) convictions based on a *Pinkerton* theory of liability as predicates for § 924(c) convictions. He also argues that *Pinkerton* liability is inapplicable to the armed bank robbery and § 924(c) counts because the jury was instructed on conspiracy to commit generic bank robbery, not armed, bank robbery, and because the government failed to show the required mens rea. Finally, Henry argues that the court should reevaluate *Pinkerton* liability in light of the holding in *Rosemond v. United States*, 572 U.S. 65 (2014), that aiding-and-abetting liability for § 924(c) charges requires proof of the defendant's advance knowledge that a firearm would be present.

**A.**

Again, an initial issue is whether Henry preserved these claims for appeal. The government asserts waiver because Henry did not raise the claims before the district court and because he submitted and approved jury instructions that included *Pinkerton* liability. Henry asserts that because his claims are based on intervening Supreme Court authority, *de novo* review is appropriate.

Henry relies on an intervening Supreme Court case, *Davis*, to support his argument that *Pinkerton* liability is inapplicable to his § 924(c) convictions. "The Government suffers no prejudice because of [Henry]'s failure to raise the issue to the district court—at the time, under then-current law, the answer would have been obvious and in the Government's favor." *McAdory*, 935 F.3d at 842.

Henry has not waived his claim that the district court misapplied *Pinkerton* liability to the § 924(c) counts under *Honeycutt*, or that *Rosemond* requires revisiting *Pinkerton* liability. "[W]aiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a *known* right." *United States v. Depue*, 912 F.3d 1227, 1232 (9th Cir. 2019) (emphasis in original) (quotations omitted). The Ninth Circuit has held that a defendant forfeited, as opposed to waived, his right to appeal an erroneous jury instruction that his attorney submitted at trial when there was no evidence that the attorney knew the correct instruction. *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997); *see also Depue*, 912 F.3d at 1233 ("Under *Perez*, a failure to object or an uninformed representation to the court is not alone sufficient evidence of waiver. Rather, there must be evidence that the defendant was aware of the right he was relinquishing and relinquished

it anyway."). The record does not reflect that Henry's trial counsel was aware of, or intentionally relinquished, the claim that *Pinkerton* liability did not apply to the § 924(c) counts because the object of the conspiracy was generic rather than armed bank robbery. Because Henry forfeited, rather than waived, these issues, we review the district court's decision for plain error. The court reviews Henry's argument that *Pinkerton* liability is inapplicable to his § 924(c) convictions *de novo*.

## B.

Henry argues, based on the two notes from the jury during deliberations, that his convictions were based on a *Pinkerton* rather than on an aiding-and-abetting theory of liability. We need not decide which liability theory the jury used to convict, because Henry's convictions are valid under either.

*Pinkerton* extends liability to a conspirator for a coconspirator's substantive offenses "when they are reasonably foreseeable and committed in furtherance of the conspiracy." *United States v. Long*, 301 F.3d 1095, 1103 (9th Cir. 2002) (citing *Pinkerton v. United States*, 328 U.S. 640, 645–48 (1946)). We have consistently held that *Pinkerton* liability applies to § 924(c) counts. *See, e.g.*, *United States v. Luong*, 627 F.3d 1306, 1308 (9th Cir. 2010); *United States v. Allen*, 425 F.3d 1231, 1234 (9th Cir. 2005); *United States v. Alvarez-Valenzuela*, 231 F.3d 1198, 1203 (9th Cir. 2000); *United States v. Winslow*, 962 F.2d 845, 853 n.2 (9th Cir. 1992). Henry argues that two recent Supreme Court cases require a different result.

In *Honeycutt*, the Supreme Court held that joint and several liability under 21 U.S.C. § 853, which requires forfeiture by defendants convicted of certain drug crimes,

did not extend to defendants who never obtained tainted property as a result of the crime. 137 S. Ct. at 1632. The Supreme Court rejected the government's contention that the text of § 853 was based on background principles of conspiracy liability, and instead based its analysis on the *in rem* nature of forfeiture. *Id.* at 1634–35. The Court explained that "§ 853 maintains traditional *in rem* forfeiture's focus on tainted property unless one of the preconditions [for forfeiting substituted property] exists." *Id.* at 1635. The forfeiture provision did not apply when the individual in question did not reap the profits of the crime. *Id. Honeycutt* overturned a forfeiture judgment against a coconspirator who did not receive the proceeds from selling materials used to produce methamphetamine. *Id.* at 1630. The Court did not review or vacate the defendant's underlying conviction for drug conspiracy. *See id.* at 1635. *Honeycutt* does not apply principles of conspiracy liability and does not require this court to vacate Henry's § 924(c) convictions.

Relying on *Davis*, Henry also argues that his § 924(c) convictions are invalid because to convict him under § 2113(d), the jury likely found him guilty under a *Pinkerton* theory, which did not require the jury to find that Henry himself intentionally used, attempted to use, or threatened to use physical force. *Davis* invalidated the § 924(c) residual clause, § 924(c)(3)(B), as unconstitutionally vague, because that provision extended § 924(c)'s long prison sentences to certain offenses treated as "crimes of violence," while "provid[ing] no reliable way to determine which offenses qualify as crimes of violence." *Davis*, 139 S. Ct. at 2324. *Davis* vacated a conviction based on a conspiracy to commit Hobbs Act robbery only under the residual clause. *Id.* at 2336.

Under *Davis*, predicate crimes of violence for § 924(c) charges are limited to those that have violence as an element under § 924(c)(3)(A). Henry's argument fails because armed bank robbery, his predicate offense, does have violence as an element. *See Buford v. United States*, 532 U.S. 59, 61 (2001) (armed bank robbery is a crime of violence in federal court); *United States v. Watson*, 881 F.3d 782, 784 (9th Cir. 2018) (per curiam) (concluding that armed bank robbery is a crime of violence under the elements clause). Defendants found guilty of armed bank robbery under either a *Pinkerton* or aiding-and-abetting theory are treated as if they committed the offense as principals. *See* 18 U.S.C. § 2(a) (whoever "aids, abets, counsels, commands, induces or procures [the] commission" of an offense against the United States is "punishable as a principal"); *Ortiz-Magana v. Mukasey*, 542 F.3d 653, 659 (9th Cir. 2008) ("there is no material distinction between an aider and abettor and principals in any jurisdiction of the United States including . . . federal courts"); *Allen*, 425 F.3d at 1234 ("The *Pinkerton* rule holds a conspirator criminally liable for the substantive offenses committed by a co-conspirator when they are reasonably foreseeable and committed in furtherance of the conspiracy." (quotation omitted)).

This court has repeatedly upheld § 924(c) convictions based on accomplice liability. *See, e.g.*, *United States v. Gadson*, 763 F.3d 1189, 1214–18 (9th Cir. 2014); *Allen*, 425 F.3d at 1234; *United States v. Johnson*, 886 F.2d 1120, 1123 (9th Cir. 1989). We have continued to affirm convictions that may have been based on a *Pinkerton* theory in unpublished decisions after *Davis*. *See*, *e.g.*, *United States v. Sleugh*, 827 F. App'x 645, 648–49 (9th Cir. 2020); *United States v. Jordan*, 821 F. App'x 792, 793 (9th Cir. 2020); *United States v. Khamnivong*, 779 F. App'x 482, 483 (9th

Cir. 2019). Since *Davis*, the First, Third, Sixth, Tenth, and Eleventh Circuits have all held that aiding and abetting Hobbs Act robbery—the conviction that was vacated in *Davis* when based on the residual clause— is a crime of violence under § 924(c)(3)(A). *See United States v. Richardson*, 948 F.3d 733, 742 (6th Cir. 2020) (collecting cases). *Davis* does not conflict with or undermine the cases upholding § 924(c) convictions based on *Pinkerton* liability.

## C.

Henry also argues that his § 924(c) convictions should be vacated because the jury instructions and verdict form for the predicate § 2113(d) convictions only required the jury to find a conspiracy to commit generic bank robbery. Henry argues that because the jury did not have to find the knowing use of a gun for the § 2113(d) convictions, the § 924(c) convictions cannot stand.

Henry's argument is unpersuasive. We have sustained convictions based on *Pinkerton* liability when the government has proven, beyond a reasonable doubt, that: "(1) the substantive offense was committed in furtherance of the conspiracy; (2) the offense fell within the scope of the unlawful project; and (3) the offense could reasonably have been foreseen as a necessary or natural consequence of the unlawful agreement." *United States v. Fonseca-Caro*, 114 F.3d 906, 908 (9th Cir. 1997) (quoting *United States v. Douglass*, 780 F.2d 1472, 1475–76 (9th Cir. 1986)).

Henry urges the court to revisit the mens rea required for *Pinkerton* liability in light of the Supreme Court's holding in *Rosemond* that "knowledge"—not just reasonable foreseeability— is required for aiding-and-abetting liability for § 924(c) charges. *See* 572 U.S. at 67. *Rosemond* did not alter Ninth Circuit precedents on accomplice liability.

*United States v. Nosal*, 844 F.3d 1024, 1040 (9th Cir. 2016) ("The instructions [in *Rosemond*] are perfectly consonant with our line of cases" on aiding-and-abetting liability). *Rosemond* raises some question about whether advance knowledge should be required for *Pinkerton* liability as well as for aiding-and-abetting liability, but it does not hold that. The facts of this case, and our plain error review, provide a poor vehicle to take that step.

The district court instructions on aiding-and-abetting liability were not plainly erroneous.[1]  At trial, Henry's friend, part of the bank robbery crew, testified that Henry and another codefendant got in an argument in April 2016 because Henry knew that this codefendant had brandished a gun during a recent robbery. The friend testified that, after this argument, Henry continued to send this codefendant to rob banks, and that this codefendant insisted on using a gun to commit the robberies. The jailhouse informant testified that Henry provided guns for the robberies and decided that using guns in the robberies was "a good idea." The record shows that Henry "chose[], with full knowledge, to participate in the illegal scheme." *Rosemond*, 572 U.S. at 79.  Use of a firearm was within the scope of the coconspirators' unlawful scheme, and Henry had advance knowledge that his codefendant would use the gun. Henry's

---

[1] The judge instructed the jury that, for aiding and abetting liability, "[i]t is not enough that the defendant merely associated with the person committing the crime or unknowingly or unintentionally did things that were helpful to that person or was present at the scene of the crime. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intention of helping that person commit the crime charged." (Docket No. 14 at 51).

conviction on either a *Pinkerton* or an aiding-and-abetting theory was amply supported.

Henry's convictions made him liable for armed bank robbery as a principal. Armed bank robbery is a crime-of-violence predicate for § 924(c)(3)(A). Henry's § 924(c) convictions are valid.

## V.

Henry argues that the armed bank robbery counts failed to allege mens rea, requiring reversal of those convictions and of the derivative § 924(c) convictions. Henry also argues that the verdict form was flawed because the definition of "armed bank robbery" did not include the use of a weapon. Instead, the verdict form defined armed bank robbery as robbery with "a display of force that reasonably caused the victim to fear bodily injury."

To support the armed bank robbery counts, the indictment alleged that "[i]n committing said offense, defendants HENRY and [his codefendants] assaulted and put in jeopardy the life of an employee of [the bank], and others, by using a dangerous weapon and device." Some of the armed bank robbery counts specified that a firearm was used. Henry's trial counsel moved to exclude an aiding-and-abetting theory from the jury instructions and verdict form on those counts, arguing that they did not allege that Henry "had the specific intent to facilitate the assault and plac[e] in jeopardy the life of an employee." The district court rejected the argument, finding that aiding and abetting was a theory of liability, not a substantive offense, and that the government had sufficiently alleged the elements of armed bank robbery. Henry reasserts the argument here.

**A.**

The government contends that Henry has waived this argument on appeal because he moved to dismiss the indictment for failing to allege the specific intent necessary for aiding-and-abetting liability for the bank robbery counts. The pretrial motion did not raise the absence of allegations of specific intent for bank robbery itself.

"[I]t is claims that are deemed waived or forfeited, not arguments." *United States v. Walton*, 881 F.3d 768, 771 (9th Cir. 2018) (quoting *United States v. Pallares–Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004)).  In the district court, Henry argued that the indictment did not support aiding-and-abetting liability because the bank robbery counts did not allege that Henry "had the specific intent to facilitate the assault and plac[e] in jeopardy the life of an employee." Henry preserved the claim that the indictment failed to allege the necessary elements for appeal even though he now advances a variation on his original argument.  We review Henry's argument *de novo*.  *United States v. Studhorse*, 883 F.3d 1198, 1203 n.3 (9th Cir.), *cert. denied*, 139 S. Ct. 127 (2018) (a variation of an argument based on a claim raised before the trial court is reviewed *de novo*).

**B.**

The armed bank robbery statute, 18 U.S.C. § 2113(d), requires more than "mere possession" of a weapon. *United States v. Odom*, 329 F.3d 1032, 1035 (9th Cir. 2003).  While "not necessarily determining that § 2113(d) contains a *mens rea* requirement," this court has held that the statute requires that "the robber *knowingly* made one or more victims at the scene of the robbery aware that he had a gun, real or not." *United States v. McDuffy*, 890 F.3d 796, 799 (9th Cir. 2018), *cert. denied*, 139 S. Ct.

845 (2019) (emphasis in original) (quoting *Odom*, 329 F.3d at 1035). "Implied, necessary elements, not present in the statutory language, must be included in an indictment." *United States v. Du Bo*, 186 F.3d 1177, 1179 (9th Cir. 1999) (alteration omitted) (quoting *United States v. Jackson*, 72 F.3d 1370, 1380 (9th Cir. 1995)).

The issue is whether the armed robbery counts allege the required mens rea for armed bank robbery. Henry relies on *Du Bo* to argue that these counts fail to allege knowing or intentional use of a weapon. In *Du Bo*, the court found that an indictment alleging that the defendant "unlawfully" affected commerce through the "wrongful" use of force was fatally flawed because it did not allege the "knowingly or willingly" mens rea required for a Hobbs Act conviction. 186 F.3d at 1179.

A defendant acts knowingly when "the defendant is aware of the act and does not act through ignorance, mistake, or accident." Manual of Model Criminal Jury Instructions (Ninth Circuit Jury Instructions Comm. 2010) (brackets and alternate wording omitted). Unlike the word "unlawfully" in the *Du Bo* indictment, the word "assault" used in Henry's indictment denotes intentionality. *See United States v. Acosta-Sierra*, 690 F.3d 1111, 1117 (9th Cir. 2012) (the two types of common-law assault are "a willful attempt to inflict injury upon the person of another" or a threat to inflict injury causing a reasonable apprehension of immediate bodily harm, sometimes called "intent-to-frighten"). The indictment charges the required mens rea.

## C.

Before trial, Henry's counsel and the government submitted joint proposed jury instructions. At the final pretrial conference, the district court noted that "[t]he jury

instructions seem to be agreed.  Unless someone raises an issue about them, I will give them as – as presented." (Docket No. 26 at 7).  The parties then made minor changes to the verdict form, but the relevant language remained the same.

Henry now challenges the armed bank robbery counts in the verdict form, which asked the jury to decide if "the robbery [was] an armed robbery, meaning, defendant aided and abetted or a co-conspirator intentionally made a display of force that reasonably caused the victim to fear bodily injury."  (Docket No. 14 at 3, 5–7, 9).  Henry argues that these questions on the verdict form, which do not include the "use of a weapon" element for the armed bank robbery counts, are plainly erroneous, requiring reversal of the convictions.

The district judge correctly instructed the jury on the use of a dangerous weapon for counts 3, 5, 6, 7, and 9.  Henry's argument does not present a basis for reversal.

The failure to include the "use of a weapon" element in a verdict form for armed robbery was incorrect.  But the jury instructions, which Henry agreed to, were correct.  The district judge's jury instruction stated that armed robbery required the government to prove beyond a reasonable doubt that "[t]he defendant or a co-conspirator . . . intentionally made a display of force that reasonably caused a victim to fear bodily harm by using a dangerous weapon or device." (Docket No. 14 at 47).  The judge instructed the jury that "[a] weapon or device is dangerous if it is something that creates a greater apprehension in the victim and increases the likelihood that police or bystanders would react using deadly force."  (Docket No. 14 at 47–48).

## VI.

Henry's convictions are **AFFIRMED**.