**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 24-804 |
| *Plaintiff - Appellee,* | D.C. Nos.<br>2:23-cr-00113-RMP-1<br>2:23-cr-00002-RMP-2 |
| v. | |
| JOHNATHAN LESLIE ALLEN,<br>AKA Johnathan Allen, AKA Ghost, | |
| *Defendant - Appellant.* | OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Rosanna Malouf Peterson, District Judge, Presiding

Argued and Submitted April 23, 2025
Coeur d'Alene, Idaho

Filed November 17, 2025

Before: Richard C. Tallman, N. Randy Smith, and Ryan D. Nelson, Circuit Judges.

Opinion by Judge R. Nelson

# SUMMARY[*]

## Criminal Law

The panel affirmed Johnathan Allen's convictions in a case in which he contended that the district court erred by (1) dismissing his original and superseding indictments without prejudice for a violation of the Speedy Trial Act (STA), and (2) admitting unauthenticated documents.

The panel held that the district court, which properly weighed each of the factors listed in 18 U.S.C. § 3162(a)(2), did not abuse its discretion when it dismissed the indictments without prejudice. As to the first factor, the district court agreed with the government that, as Allen did not dispute, Allen's offense was serious. The district court soundly analyzed the second factor when it considered the facts and circumstances of the case, reasoning that the facts leading to the STA violation were technical. Third, the district court did not abuse its discretion when it recognized that the efficient-administration-of-justice factor tipped toward dismissal without prejudice.

The panel held that the district court did not abuse its discretion by admitting a set of incriminating Facebook screenshots (the Facebook records) tying Allen to the crimes.

The panel rejected Allen's argument that the Facebook records were not properly authenticated. The Facebook records are self-authenticating under Fed. R. Evid. 902(11)

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

and 803(6) as certified records maintained by Facebook in the regular course of its business, and those records' underlying substantive content was authenticated under Fed. R. Evid. 901(a) through the government's proffered extrinsic evidence.

The panel held that the Facebook records (1) were admissible under Fed. R. Evid. 404(b) to support the government's theory on identity; and (2) complied with Fed. R. Evid. 403, where the records were relevant in tying Allen to his crimes, unfairly prejudicial references were redacted, and duplicative exhibits were excluded.

The panel addressed other issues in a concurrently filed memorandum disposition.

## COUNSEL

David M. Herzog (argued), Assistant United States Attorney, Appeals Chief; Vanessa R. Waldref, United States Attorney; Office of the United States Attorney, United States Department of Justice, Spokane, Washington; for Plaintiff-Appellee.

Zachary L. Ayers (argued), Ayers Law Firm PLLC, Spokane, Washington; Stephen R. Hormel, Hormel Law Office, Spokane Valley, Washington; for Defendant-Appellant.

# OPINION

R. NELSON, Circuit Judge:

Johnathan Allen challenges his convictions on two grounds, contending that the district court erred by (1) dismissing his indictment without prejudice for a violation of the Speedy Trial Act (STA), and (2) admitting unauthenticated documents. We reject these challenges and affirm.

## I

Jonathan Allen has a long criminal history that includes convictions for first degree robbery, theft, promoting prostitution, possession of weapons capable of producing harm, possession of controlled substances, resisting arrest, obstructing a law enforcement officer, and unlawful possession of a firearm. Allen was known to law enforcement officers as a person who engaged in drug and firearm distribution in the Spokane, Washington area. Starting in 2022, undercover agents with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) investigated drug and firearm distribution in Spokane. The ATF discovered that Allen had distributed methamphetamine and possessed a firearm.

Allen and three codefendants were indicted by a federal grand jury on January 4, 2023. Allen was indicted for one count of distribution of methamphetamine and one count of felon in possession of a firearm. On February 7, 2023, Allen was arrested at the Northern Quest Casino outside Spokane, with a loaded 9mm handgun in his pocket. Thereafter, all the defendants were arraigned, and trial was set for April 10, 2023.

Several developments delayed Allen's case proceeding to trial in April. First, one of Allen's codefendants moved for a continuance to delay the trial until June 5, to which Allen agreed.[1] Second, a grand jury returned a superseding indictment on May 2, 2023, for Allen and his codefendants. Allen was charged with conspiracy to distribute methamphetamine, distribution of methamphetamine, and two counts of possessing a firearm as a felon. Finally, on that same day, Allen filed multiple substantive pretrial motions—a motion to sever, a motion to suppress pretrial identification, a motion for production of grand jury transcripts regarding the original indictment, motions in limine, a motion to dismiss for selective prosecution, a motion for production of 404(b) evidence, and a motion to dismiss based on improper government conduct during plea negotiations. Despite these developments, Allen still insisted on going to trial on June 5.

On May 23, 2023, Allen filed another motion to produce grand jury transcripts. On May 26, Allen filed additional motions with the court. Then on June 2, Allen filed a motion for grand jury abuse.

On June 2, the district court held a hearing on some of Allen's pending motions and on whether trial could proceed as scheduled. After denying several of Allen's motions, the district court concluded that at least one motion would require additional briefing and a hearing, meaning trial would need to be delayed. The court then suggested October 2 as the new trial date. On questioning, Allen's counsel told the court that the date worked for him and declined to raise

---

[1] While another of Allen's codefendants requested a second continuance, Allen informed the court that he was opting out of all future motions for continuance and wished to go to trial on June 5.

other issues or make additional arguments. On June 12, the district court issued a written order, stating the Government and Allen had agreed to a continuance until October 2, and that the ends of justice were served by that continuance.

One week before the start of the new trial, Allen moved to dismiss the indictment and superseding indictment with prejudice under the STA, 18 U.S.C. § 3161.[2] Allen asserted that his seventy-day Speedy Trial clock had elapsed and that, between July 12 and October 2, none of the days were excludable.[3]

The district court granted the motion to dismiss without prejudice. It reasoned that, when it proposed the new trial date of October 2, it did not sufficiently explain that the four-month extension was an "ends of justice" continuance permitted by the STA, 18 U.S.C. § 3161(h)(7)(A). *See United States v. Jordan*, 915 F.2d 563, 565–66 (9th Cir. 1990). Further, Allen had not signed a Speedy Trial waiver or expressly waived his Speedy Trial rights. So the district court found that a STA violation had in fact occurred. Given the STA violation, the district court dismissed both the original indictment and the superseding indictment without prejudice based on statutorily enumerated factors in 18 U.S.C. § 3162(a)(2). The next day, a grand jury returned a

---

[2] Allen's codefendants did not join the motion.

[3] Allen waived his Speedy Trial rights until June 5, 2023. The Government also agreed that, on October 2, 2023, more than seventy days would have elapsed since July 14, 2023, when the Court denied Defendant's purported grand jury abuse motion. Even though the district court recognized that some days following June 5, 2023, would be excludable, for purposes of the STA violation analysis, the district court used the period between June 5 and October 2, 2023.

new indictment charging Allen with the same offenses just dismissed.

The case proceeded to trial. During the trial, the district court admitted a set of incriminating Facebook screenshots (the Facebook records) tying Allen to the crimes. Allen was convicted and sentenced to a below-the-guidelines term of 180 months' imprisonment. Allen appealed, challenging the district court's decisions to dismiss without prejudice for the STA violation and to admit the Facebook records.[4]

## II

We have jurisdiction under 28 U.S.C. § 1291. "We review de novo a district court's decision to dismiss on [STA] grounds and its findings of fact for clear error." *United States v. Olsen*, 21 F.4th 1036, 1040 (9th Cir. 2022) (citing *United States v. Henry*, 984 F.3d 1343, 1349–50 (9th Cir. 2021)). We further "review the district court's decision to dismiss with or without prejudice for abuse of discretion." *Id.* at 1047–48.

We review for abuse of discretion the district court's decision to admit evidence and its acceptance of evidence as authentic. *See United States v. Aliverez*, 831 F.3d 1115, 1120 (9th Cir. 2016). The defendant must establish that the evidentiary error "was prejudicial, and that the verdict was more probably than not affected as a result." *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 953 (9th Cir. 2011) (citation omitted). "We reverse only if we are convinced firmly that the reviewed decision lies beyond

---

[4] As addressed in the memorandum disposition filed concurrently, none of Allen's other arguments prove availing.

the pale of reasonable justification under the circumstances."
*Id.* (cleaned up).

## III

The district court did not abuse its discretion when it
dismissed the indictments without prejudice. The district
court properly weighed each of the statutory factors listed in
§ 3162(a)(2) before dismissing without prejudice.[5]

The STA's statutory structure works as follows. The
STA states that "the trial of a defendant" "shall commence
within seventy days" after he is charged with an information
or indictment, or makes an initial appearance, whichever is
later. 18 U.S.C. § 3161(c)(1). This timing requirement,
however, excludes delays because of certain enumerated
events. *Id.* § 3161(h). The clock stops for "delay resulting
from any pretrial motion, from the filing of the motion
through the conclusion of the hearing on, or other prompt
disposition of, such a motion." *Id.* § 3161(h)(1)(D). The
clock also stops during "[a]ny period of delay resulting from
a continuance granted by any judge . . . [when] the court sets
forth, in the record of the case, either orally or in writing, its
reasons for finding that the ends of justice served by the
granting of such continuance outweigh the best interests of
the public and the defendant in a speedy trial." *Id.*
§ 3161(h)(7)(A).

With these principles in mind, the district court did not
abuse its discretion by dismissing the indictments without

---

[5] Allen did not raise a separate speedy trial violation under the Sixth
Amendment on appeal. Thus, the issue is forfeited. *See Padgett v.
Wright*, 587 F.3d 983, 985 n.2 (9th Cir. 2009). Even if not forfeited, the
"Speedy Trial Act affords greater protection to a defendant's right to a
speedy trial than is guaranteed by the Sixth Amendment." *See United
States v. Baker*, 63 F.3d 1478, 1497 (9th Cir. 1995).

prejudice. The district court determined that an STA violation occurred because it had neither acquired a waiver of Allen's speedy trial rights from Allen nor sufficiently explained why the ends of justice were served by the continuance. In the June 12 pretrial written order (documenting the June 2 hearing), the district court noted that the continuance was based on "(1) the denial of the Motion to Sever; (2) the anticipated briefing and hearing schedule for, and the anticipated disposition on, Defendant Allen's newly filed pretrial motion; and (3) finding that failure to grant a continuance would deny the parties the reasonable time necessary for effective preparation, taking into account the exercise of due diligence." However, the district court continued: "the Court finds that the ends of justice served by ordering a continuance of proceedings in this matter outweigh the best interests of the public and Defendant's right to a speedy trial, pursuant to 18 U.S.C. § 3161(h)(7)(A)." Finding that this analysis may not be sufficient to satisfy the requirements of the STA, the district court found that Allen's rights were violated.

However, § 3162(a)(2) does not require dismissal with prejudice in every case. Instead, three statutory factors are considered "[i]n determining whether to dismiss the case with or without prejudice": (1) "the seriousness of the offense"; (2) "the facts and circumstances of the case which led to dismissal"; and (3) "the impact of a reprosecution . . . on the administration of justice." *Id.* § 3162(a)(2); *see also United States v. Taylor*, 487 U.S. 326, 333 (1998). "The choice of whether to dismiss with or without prejudice depends on a careful application of the statutorily enumerated factors to the particular case; there is no presumption in favor of either sanction." *United States v. Clymer*, 25 F.3d 824, 831 (9th Cir. 1994). And before

entering a dismissal without prejudice, a defendant has a right to notice, counsel, and an opportunity to be heard (requirements met here). *United States v. Delgado-Miranda*, 951 F.2d 1063, 1064 (9th Cir. 1991) (per curiam).

The district court considered each § 3162(a)(2) factor. First, it agreed with the government that Allen's offense was serious; Allen does not dispute this fact. Second, the district court reasoned that the facts leading to the STA violation were technical ones. The district court reasoned that an STA violation arose because it did not properly document that its continuance met the ends-of-justice requirements in § 3161(h)(7)(A). While we may dispute that reasoning (after reading the June 12 order), had the district court taken the time to make its analysis more explicit, § 3161(h)(7)(A)'s requirements would have been met. Finally, the district court cited a lack of bad faith—both parties were ready to proceed to trial. Allen did not allege any harm to his defense due to the delay, and the court found none. The § 3162(a)(2) factors thus leaned toward dismissal without prejudice, allowing the government to seek a new indictment.

On this record, we conclude that the district court did not abuse its discretion by dismissing without prejudice. *See Olsen*, 21 F.4th at 1047–48. Allen's charges—distributing methamphetamine and possessing a firearm as a felon—are serious as defined by the STA. *See United States v. Lewis*, 611 F.3d 1172, 1180 (9th Cir. 2010) (affirming dismissal without prejudice because offenses carrying a maximum sentence of five years are "'serious' within the context of the Speedy Trial Act" (citation omitted)).

The district court also soundly analyzed the second factor. The statute requires consideration of "the facts and circumstances of the case which led to the dismissal." 18

U.S.C. § 3162(a)(2). The sole reason an STA violation requiring dismissal under § 3162(a)(2) occurred was because the district court reasoned that it had not sufficiently articulated reasons to support an ends-of-justice finding. The district court also failed to obtain an affirmative STA waiver from Allen. So penalizing the government for the STA violation would have been inappropriate.

Had the district court conducted and memorialized a more thorough analysis, it would have found the ends-of-justice continuance requirements were met. The STA lists factors that a judge must consider before excluding time from the Speedy Trial clock under the ends-of-justice provision. *See id.* § 3167(h)(7)(B). One of those factors is whether "it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the [STA's] time limits." *Id.* § 3161(h)(7)(B)(ii). Although the district court did not couch its analysis in the statutory factors, it reasoned that more time was needed to brief and potentially hear argument on Allen's new pretrial motions. It also determined, consistent with the statute, that the failure to grant a continuance would deny the parties the reasonable time necessary for effective preparation, considering the exercise of due diligence. *See id.* § 3161(h)(7)(B)(iv). While the district court concluded that it had not adequately analyzed the statutory factors to grant an ends-of-justice continuance, the district court's rationale suggests that its continuance would have been justified under § 3167(h)(7)(B).

Caselaw confirms that dismissal without prejudice was appropriate. *See United States v. Medina,* 524 F.3d 974, 981 (9th Cir. 2008). Where "violations of the Speedy Trial Act [are] merely technical," and "the continuances that contributed to the Speedy Trial Act violation had been

granted for reasons that would have met the criteria of § 3161(h)(7)(B)," but did not meet such criteria only because the court and the parties "failed to document that the continuances met such criteria," such "Speedy Trial Act violations [do] not warrant dismissal with prejudice." *Id.* at 981–82.

And finally, the third § 3162(a)(2) factor—the impact of a reprosecution on the administration of justice—also supports dismissal without prejudice. In a case like this— where the evidence does not suggest that the STA violation "was the result of bad faith on the part of the government"— "the administration of justice and the consideration of the Speedy Trial Act do not warrant dismissing the case with prejudice." *Id.* at 982 (cleaned up).

Allen asserts that the government employed delay tactics to stop the case from going to trial. But the district court instead concluded, in its discretion, that the government was not to blame. In fact, Allen primarily caused the delays by filing a deluge of pretrial motions that the district court reasonably needed more time to decide. The STA permits district courts to take such time. 18 U.S.C. § 3161(h)(1)(D).

Nor did the STA violation prejudice Allen. While prejudice alone is not dispositive, "there is little doubt that Congress intended [prejudice] to be relevant for a district court's consideration." *Taylor*, 487 U.S. at 334. Allen did not allege any harm to his defense based on the delay, such as witnesses becoming unavailable or their memories fading. *See Clymer*, 25 F.3d at 832. Nor does Allen's incarceration during the delay constitute actual prejudice. *Cf. United States v. Yuan Qing Jiang*, 214 F.3d 1099, 1103 (9th Cir. 2000). The district court did not abuse its discretion when it recognized that the efficient administration of justice factor

tipped toward dismissing Allen's indictments without prejudice.

"Dismissal, however, need not represent a windfall," when "a district court may fail to make the findings necessary for an exclusion under subsection (h)(7) . . . ." *Bloate v. United States*, 559 U.S. 196, 214 (2010). To the contrary, district courts should consider "the party responsible for the delay" and "may dismiss the charges *without prejudice*." *Id.* at 215 In this case, the district court followed the statute and determined that all three factors enumerated in § 3162(a)(2) counseled dismissing Allen's indictments without prejudice.

## IV

Allen also raises two evidentiary challenges to the district court's admission of his Facebook records. First, he argues that the records were not properly authenticated. Second, he argues that the records should have been excluded under Federal Rules of Evidence 404(b) and 403. Both arguments lack merit.

## A

The Facebook records were properly authenticated. "Authentication is a condition precedent to admissibility, and this condition is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (cleaned up); Fed. R. Evid. 901(a). But self-authenticating evidence, *see* Fed. R. Evid. 902(11), "governing certified domestic records of regularly conducted activity," automatically meets the authentication requirement. *United States v. Weiland*, 420 F.3d 1062, 1072 (9th Cir. 2005).

Under Federal Rule of Evidence 902(11), the original or copy of a domestic record that meets the requirements of Rule 803(6)(A)–(C), accompanied by a certification by the custodian of that record, qualifies as self-authenticating. And Rule 803(6), cross referenced in Rule 902(11), addresses business records. *See* Fed. R. Evid. 803(6). Federal Rule of Evidence 803(6) is met when:

> (A) the record was made at or near the time by — or from information transmitted by — someone with knowledge;
>
> (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit; [and]
>
> (C) making the record was a regular practice of that activity[.]

If certified business records meet the requirements of both Rules 803(6) and 902(11), they are self-authenticating.

The district court did not abuse its discretion in admitting the Facebook records as the evidence met the requirements of both rules. The government offered certification from Facebook's record custodian satisfying Rule 902(11). That sworn certification established that the record produced in response to the government's search warrant was made "at or near the time the information was transmitted by [Allen]" and kept by automated systems "in the course of regularly conducted activity as a regular practice of [Facebook]," thus meeting the requirements of Rule 803(6)(A)–(C). Since the Facebook records satisfied the strictures of both Rules 902(11) and 803(6), they were self-authenticating.

Allen argues that because Facebook does not authenticate the substantive content of its messages (i.e., the discussion of Allen's drug dealing found in the admitted evidence), the Facebook records were not kept in Facebook's ordinary course of business as required by Rule 803(6). But the only function of Rule 902(11)—and by extension Rule 803(6) in the authentication context—is to certify that the Facebook records are what the government claims they are (i.e., records from Facebook). The government used Rules 902(11) and 803(6) to authenticate the technical rather than the substantive attributes of the Facebook records.

The government separately authenticated the underlying content of the Facebook records through the normal process under Rule 901(a). Under Rule 901(a), "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Just to name a few pieces of evidence the government offered: the Facebook profile photograph in the Facebook records matched Allen's appearance, the user had the same birthday as Allen, and the messages referred to Allen's drug dealer moniker ("Ghost") and cell phone number. Fed. R. Evid. 901(b)(4) (permitting authentication based on "appearance, contents, substance, internal patterns, or other distinctive characteristics of the item, taken together with all the circumstances").

Allen claims several cases from other circuits require a different analysis. We disagree. All those cases point towards the conclusion that the government may authenticate the substance of social media evidence through circumstantial evidence linking a defendant to a social media account. *See, e.g.*, *United States v. Lamm*, 5 F.4th 942, 948

(8th Cir. 2021); *United States v. Barber*, 937 F.3d 965, 970 (7th Cir. 2019); *United States v. Browne*, 834 F.3d 403, 411–14 (3d Cir. 2016). Our approach fully comports with that approach. Rule 902(11) can authenticate the mechanical or technical aspects of social media records. The type of extrinsic evidence the government offered linking Allen to the account depicted in the Facebook records can authenticate the underlying substantive content of those records under Rule 901(a).

The Facebook records were thus authenticated under Rules 902(11) and 803(6) as records maintained by Facebook in the regular course of its business. And those records' underlying content were authenticated under Rule 901(a) through the government's proffered extrinsic evidence. The Facebook records were fully authenticated and were properly admitted as evidence at Allen's trial.

B

Admitting the Facebook records also complied with Federal Rules of Evidence 403 and 404(b). Allen filed a motion in limine to exclude the records as unfairly prejudicial under Rule 403 and as impermissible propensity evidence under Rule 404(b). The records fell into two categories: (1) evidence of Allen's direct participation in the charged offenses, and (2) evidence establishing that Allen was the user of the John Allen account. For example, the government offered as direct evidence the message in which the user of the John Allen account said, "I need to go pick up my shooter on Pines." And for evidence of identity, the government pointed to Facebook messages referring to the user with Allen's drug dealer moniker, "Ghost."

Allen's Rule 404(b) arguments mostly target the second group of records: those used to show identity. The district

court disagreed with Allen that these records were impermissible "other act" evidence under Rule 404(b) and unfairly prejudicial under Rule 403. We review de novo whether evidence is other act evidence under Rule 404(b), but the admission of this evidence is reviewed for abuse of discretion. *United States v. Carpenter*, 923 F.3d 1172, 1180–81 (9th Cir. 2019).

Under Rule 404(b), evidence of other acts is not admissible to prove character but may be admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Evidence under Rule 404(b) may be admitted if: "(1) the evidence  tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that [the] defendant committed the other act; and (4) (in certain cases) the other act is similar to the offense charged." *United States v. Cox*, 963 F.3d 915, 924 (9th Cir. 2020) (quoting *United States v. Bailey*, 696 F.3d 794, 799 (9th Cir. 2012)). Even if the evidence is admissible under Rule 404(b), it remains subject to the general balancing test under Rule 403. *Id.* at 925.

There was no error under Rule 404(b). Allen disputed identity as to both the charged crimes and the user of the Facebook account. The records—by suggesting that Allen was the person behind the Facebook account—supported the government's theory on identity. Such evidence is expressly permitted under Rule 404(b). *See id.* at 924–25 (over a Rule 404(b) objection, admitting prior messages involving child pornography to identify the defendant as the person behind an online moniker). The Facebook records evidence "help[ed] establish identity," meaning they were "authorize[d]" under Rule 404(b) and were "subject only to

the relevancy criteria of Rule 403." *United States v. Miller*, 688 F.2d 652, 659 (9th Cir. 1982).

And the admission of the records also complied with Rule 403. Under that rule, the district "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The Facebook records were relevant in tying Allen to his crimes. *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 52 F.4th 1054, 1082 (9th Cir. 2022). The district court did not abuse its discretion in admitting the records. In fact, it sought to ensure that the Facebook records did not unduly bias the jury. The district court required the government to redact references that it thought were unfairly prejudicial. The court also excluded exhibits that were unnecessarily duplicative of other evidence.

V

The district court did not abuse its discretion either by dismissing Allen's indictments without prejudice or by admitting the Facebook records evidence.

**AFFIRMED.**